**BOARD OF COMMISSIONERS OF La-PORTE COUNTY, Board of Commissioners of Porter County, Town of Beverly Shores and Town of Pines, Appellants–Petitioners,**

v.

**GREAT LAKES TRANSFER, LLC and The Indiana Department of Environmental Management, Appellees–Respondents.**

No. 49A02–0709–CV–837.

Court of Appeals of Indiana.

June 12, 2008.

---

Shaw R. Friedman, Friedman & Associates, LaPorte, IN, Robert W. Wright, Dean–Webster & Wright, Indianapolis, IN, Gwenn R. Rinkerberger, Clay M. Patton, Gordon A. Etzler & Associates, Valparaiso, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Sue A. Shadley, Amy E. Romig, Plews Shadley Racher & Braun, Indianapolis, IN, John H. Lloyd, Plews Shadley Racher & Braun, South Bend, IN, Attorneys for Appellees.

## OPINION

BROWN, Judge.

The Board of Commissioners of LaPorte County ("LaPorte County"), the Board of Commissioners of Porter County ("Porter County"), the Town of Beverly Shores ("Beverly Shores"), and the Town of Pines ("Pines") (collectively, "Appellants") appeal the trial court's affirmation of an order by the Office of Environmental Adjudication ("OEA") in favor of Great Lakes Transfer, LLC ("Great Lakes Transfer"), and the Indiana Department of Environmental Management ("IDEM"). Appellants raise four issues, which we revise and restate as:

I. Whether the trial court abused its discretion by transferring venue to Marion County;

II. Whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit to Great Lakes Transfer even though Great Lakes Transfer

did not have a permit for road access was not arbitrary and capricious;

III. Whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit when Great Lakes Transfer did not own the property at issue was not arbitrary and capricious;

IV. Whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit when Great Lakes Transfer's building permit was later rescinded was not arbitrary and capricious;

V. Whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit despite wetlands concerns was not arbitrary and capricious; and

VI. Whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit despite concerns of environmental justice and public participation was not arbitrary and capricious.

We affirm.

The relevant facts follow. In August 2004, Great Lakes Transfer submitted a solid waste transfer facility permit application to IDEM for property located on the LaPorte County side of the Porter County–LaPorte County Line Road. IDEM issued the permit to Great Lakes Transfer on November 9, 2005.

In November 2005, Porter County, Beverly Shores, and Pines each filed petitions for review with the OEA challenging IDEM's issuance of the permit. Porter County argued that IDEM should not have granted the permit because Porter County had denied a driveway permit to Great

Lakes Transfer and, thus, Great Lakes Transfer's permit application was incomplete. Beverly Shores argued that IDEM should not have granted the permit because: (1) the permit violated IDEM's Environmental Justice Strategic Plan; (2) the due process rights of Beverly Shores and its citizens had been violated; (3) there was a significant adverse effect on public health and the environment; (4) the permit application did not meet the relevant requirements; and (5) the facility would not be constructed and operated according to the relevant statutes. Pines argued that IDEM should not have granted the permit because: (1) the permit violated IDEM's Environmental Justice Strategic Plan; (2) there was a significant adverse effect on public health and the environment; (3) the permit application did not meet the relevant requirements; and (4) the facility would not be constructed and operated according to the relevant statutes. In January 2006, LaPorte County filed a petition to intervene in the review. LaPorte County's petition agreed to "take the case as it finds it on the date of intervention" and not to "unduly broaden the issues to be considered." Appellees' Appendix at 87.

In April 2006, Great Lakes Transfer filed a motion to dismiss or for summary judgment, and IDEM filed a motion for summary judgment. After briefing and a hearing, the OEA issued findings of fact and conclusions thereon granting summary judgment to Great Lakes Transfer and IDEM. Specifically, the OEA found:

17. In order to demonstrate that they are likely to prevail on the merits, the Towns, Porter County, and La-Porte County have the burden of showing that a permit was issued contrary to law or is somehow deficient as a matter of law. In the matter of Objection to the Issuance

of Permit Approval No. IN 0061042 Aquasource Services and Technology, 2002 IN ENV LEXIS 18 at *6 (In.Off.Env.Adjud., December 18, 2002)("Aquasource").

18. Petitioners have raised no specific issues challenging the validity of IDEM's decision that Great Lakes' permit application complies with applicable laws and rules. None of the issues raised by Petitioners and Intervenor address the permit's terms or regulatory requirements. Petitioners cannot show that the permit was deficient as a matter of law. Since Petitioners have not raised any issues relating to the approval of the permit application, this Court will not overturn IDEM's decision to issue the permit.

19. This Court finds that there is no genuine issue as to a material fact and that summary judgment is appropriate. Neither the Towns, Porter County, nor LaPorte County have pointed to a statute or regulation that IDEM violated in issuing Great Lakes' permit, therefore Great Lakes' is entitled to judgment as a matter of law and IDEM's approval of Great Lakes' permit should be affirmed.

Appellants' Appendix at 30.

Porter County, LaPorte County, Beverly Shores, and Pines then filed verified petitions for review of the OEA's administrative order with the trial court in LaPorte County. Great Lakes Transfer and IDEM requested a change of venue to Marion County, which the trial court granted over Appellants' objections. After briefing and arguments, the trial court issued findings of fact and conclusions thereon affirming the OEA's order. Specifically, the trial court found:

Based on the foregoing Findings of Fact, Conclusions of Law and legal precedent, this Court FINDS that the OEA Order was not shown to be arbitrary or capricious or otherwise deficient at law and HOLDS that the OEA Order is affirmed and Petitions for Review denied. Petitioners have not demonstrated the OEA Order was "arbitrary and capricious," without any consideration of the facts[,] or lacks any basis that might lead a reasonable person to concur that the Permit should not have been issued. Because Petitioners are not entitled to a remand of this action to the OEA, the Court denies Petitioners' Verified Petitions for Judicial Review.

*Id.* at 20. Appellants then filed motions to correct error, which the trial court denied.

■■■ Judicial review of an administrative decision is limited under the Administrative Orders and Procedures Act ("AOPA"). *Huffman v. Office of Envtl. Adjudication,* 811 N.E.2d 806, 809 (Ind. 2004). Agency action subject to AOPA will be reversed only if the court "determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." *Id.; see* Ind.Code § 4–21.5–5–14(d).

■■■ Review of an agency's decision is largely confined to the agency record, and the court may not "substitute its judgment for that of the agency." *Ind. Dept. of Envtl. Mgmt. v. Boone County Res. Recovery Sys., Inc.,* 803 N.E.2d 267, 271 (Ind.Ct. App.2004) (quoting *Family Dev., Ltd. v. Steuben County Waste Watchers, Inc.,* 749

N.E.2d 1243, 1256 (Ind.Ct.App.2001), *reh'g denied*), *trans. denied.* We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law de novo. *Huffman,* 811 N.E.2d at 809. Further, we note that an action is arbitrary and capricious only where there is no reasonable basis for the action. *Boone County Res. Recovery,* 803 N.E.2d at 272. The challenging party has the burden of proving that they are entitled to relief from an administrative action. *Id.*

Many of Appellants' arguments require an analysis of the relevant statutes and regulations. In *Boone County Res. Recovery,* we noted the applicable standard of review for statutory interpretation:

> Statutory interpretation is a question of law reserved for the court and is reviewed de novo. De novo review allows us to decide an issue without affording any deference to the trial court's decision. When a statute has not previously been construed, ... our interpretation is controlled by the express language of the statute and the rules of statutory construction. Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless that interpretation is inconsistent with the statute itself. When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. When a court determines that an administrative agency's interpretation is reasonable, it should "terminate [ ] its analysis" and not address the reasonableness of the other party's interpretation. Terminating the analysis recognizes "the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations."

803 N.E.2d at 273 (quoting *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App. 2003)).

## I.

■ The first issue is whether the trial court abused its discretion by transferring venue from LaPorte County to Marion County. The Indiana Supreme Court recently clarified that factual findings linked to a ruling on a motion to transfer venue are reviewed under a clearly erroneous standard and rulings of law are reviewed de novo. *American Family Ins. Co. v. Ford Motor Co.,* 857 N.E.2d 971, 973 (Ind. 2006). "If factual determinations are based on a paper record, they are also reviewed de novo." *Id.*

The venue of judicial review for an OEA action is governed by Ind.Code § 4–21.5–5–6 of the AOPA, which, at the time of the trial court's order, provided: [1]

---

1. Ind.Code § 4–21.5–5–6 was amended effective July 1, 2007, and now provides:
   (a) Venue is in the judicial district where:
     (1) the petitioner resides or maintains a principal place of business;
     (2) the agency action is to be carried out or enforced; or
     (3) the principal office of the agency taking the agency action is located.

   (b) If more than one (1) person may be aggrieved by the agency action, only one (1) proceeding for review may be had, and the court in which a petition for review is first properly filed has jurisdiction.
   (c) The rules of procedure governing civil actions in the courts govern pleadings and requests under this chapter for a change of

(a) Except as provided in subsection (e), venue is in the judicial district where:

   (1) the petitioner resides or maintains a principal place of business;

   (2) the agency action is to be carried out or enforced; or

   (3) the principal office of the agency taking the agency action is located.

(b) If more than one (1) person may be aggrieved by the agency action, only one (1) proceeding for review may be had, and the court in which a petition for review is first properly filed has jurisdiction.

(c) The rules of procedure governing civil actions in the courts govern pleadings and requests under this chapter for a change of judge or change of venue to another judicial district described in subsection (a).

(d) Each person who was a party to the proceeding before the agency is a party to the petition for review.

(e) Venue with respect to judicial review of an action of the Indiana board of tax review is in the tax court.

Under Ind.Code § 4–21.5–5–6(c), a request for change of venue is also governed by Ind. Trial Rule 76(A), which provides that: "In civil actions where the venue may be changed from the county, such change of venue from the county may be had only upon the filing of a verified motion specifically stating the grounds therefor by the party requesting the change. The motion shall be granted only upon a showing that the county where suit is pending is a party . . . ."

The petitions for judicial review were initially filed in LaPorte County, which is the county in which "the agency action is to be carried out or enforced," but LaPorte County is also a party to the suit. Ind. Code § 4–21.5–5–6(a)(2); Ind. Trial Rule 76(A). Consequently, Ind. Trial Rule 76(A) required that the trial court grant the motion for change of venue.

Great Lakes Transfer and IDEM requested a transfer of venue to Marion County, but Appellants argue that venue should have been changed to an adjoining county under the procedure set forth in Ind. Trial Rule 76(D), which provides:

Whenever a change of venue from the county is granted, the parties may, within three (3) days from the granting of the motion or affidavit for the change of venue, agree in open court upon the county to which venue shall be changed, and the court shall transfer such action to such county. In the absence of such agreement, the court shall, within two (2) days thereafter, submit to the parties a written list of *all counties adjoining the county from which the venue is changed,* and the parties within seven (7) days from the date the clerk mails the list to the parties or within such time, not to exceed fourteen (14) days from that date, as the court shall fix, shall each alternately strike off the names of such counties. The party first filing such motion shall strike first, and the action shall be sent to the county remaining not stricken under such procedure. If a party is brought into the action as provided in Trial Rule 14, and that party thereafter files a motion for change of venue which is granted, that party and the plaintiff shall be the parties entitled to strike. A moving party that fails to strike within said time shall not be entitled to a change of venue, and the court shall resume jurisdiction of the cause. If a nonmoving party fails to

---

judge or change of venue to another judicial district described in subsection (a).

(d) Each person who was a party to the proceeding before the agency is a party to the petition for review.

strike within the time limit, the clerk shall strike for such party.

(Emphasis added).

Appellants' argument ignores the language of Ind.Code § 4–21.5–5–6(c), which notes that "[t]he rules of procedure governing civil actions in the courts govern pleadings and requests under this chapter for a ... change of venue *to another judicial district described in subsection (a).*" Thus, while venue may be changed, it must be changed to one of the other judicial districts described in Ind.Code § 4–21.5–5–6(a).

Ind.Code § 4–21.5–5–6(a) identifies three venue options: (1) where the petitioner resides or maintains a principal place of business; (2) where the agency action is to be carried out or enforced; or (3) where the principal office of the agency taking the agency action is located. As noted above, LaPorte County is the county where "the agency action is to be carried out or enforced." Ind.Code § 4–21.5–5–6(a)(2). Additionally, the petitioners "reside[ ] or maintain[ ] a principal place of business" in LaPorte County and Porter County, and "the principal office of the agency taking the agency action is located" is Marion County. Ind.Code § 4–21.5–5–6(a)(1), –6(a)(3). Consequently, the trial court was left with possible venue in either Porter County or Marion County. However, Porter County suffers the same problem as LaPorte County because Porter County is also a party to the suit. *See* Ind. Trial Rule 76(A). As a result, venue in Marion County was proper, and the trial court did not err by granting the motion to change venue to Marion County.

## II.

The next issue is whether the trial court erred in determining that the OEA's deci-

sion that IDEM properly granted a permit to Great Lakes Transfer even though Great Lakes Transfer did not have a permit for road access was not arbitrary and capricious. In its petition for administrative review with the OEA regarding the issuance of a permit to Great Lakes, Porter County argued that "[t]he permit application was not complete and therefore should not have been issued because there is and will be no road access to the site." [2] Appellees' Appendix at 25. The OEA found:

10. While Petitioners have shown that their legal interest in enforcing road weight limits, local zoning and building permit regulations is aggrieved and adversely affected should Great Lakes not comply with applicable regulations, including lack of a road-cut permit because of the alleged harm, i.e., the alleged inability to construct an access road because Great Lakes lacks a road cut permit, such condition will also prevent IDEM from allowing Great Lakes to operate if in fact that condition is true.

11. Petitioners claim that failure to demonstrate that Great Lakes had submitted a complete application as stated in 329 IAC 11–9–2 should result in overturning IDEM's decision to issue the permit. Petitioners' allegations that Great Lakes' application was not complete included the following:

    a. As Great Lakes had not obtained a driveway permit, it therefore lacked the requisite road access;

    b. LaPorte County's road access approval, as submitted with Great

---

2. LaPorte County, Beverly Shores, and Pines did not raise this issue in their petitions for administrative review.

Lakes' application, was ineffective, as the specific road was subject to Porter County's jurisdiction, and not that of LaPorte County;

\* \* \* \* \*

14. IND CODE § 13–15–3–5 recognizes a two phase process for permitting procedures. "Whenever a permit is required by any rule of one of the boards under IC 13–15–1 for the construction, installation, operation, or modification of any facility, equipment, or device, the permit may be issued only after the department staff has:

(1) approved the plans and specifications; and

(2) determined that the facility, equipment or device meets the requirement of the rule."

15. Therefore, 329 IAC 11–9–2(h) only requires that Great Lakes submit an application that contains a plot plan that shows how the facility will have road access, i.e. how the facility will connect to local roads. The regulation does not require that Great Lakes must demonstrate that it has obtained all certifications and permits to access local roads. However, the lack of a permitted driveway will also prevent IDEM from allowing Great Lakes to operate if in fact that condition is true.

16. Porter County makes the corresponding undisputed allegation that overweight trucks from the operation of the Transfer Station will harm its roads. Porter County presented testimony that it has the sole and exclusive jurisdiction over the roadways in Porter County, including County Line Road. Testimony of Commissioner Harper, March 1, 2006, p. 60, 1. 20. In addition, the Porter County Code specifically governs enforcement of violation of regulated weight limits of vehicles utilizing public rights-of-way in Porter County. Exhibit 32, admitted March 1, 2006, Porter County Code §§ 10.024.050, 10.024.060. This Court does not have the jurisdiction to consider traffic issues that are within the province of local municipalities. Both the jurisdiction to consider such traffic issues, and the enforcement power to enforce local regulations cannot be encroached upon by this Court, should operation of the Transfer Station in fact harm Porter County's roads.

\* \* \* \* \*

18. Petitioners and Intervenor have requested that this Court decide that IDEM erred in issuing the permit because circumstances later changed, including conveyance of real estate to Great Lakes, driveway permit, road access and zoning and building permits.... The permit does not allow or give Great Lakes authority or permission to ignore local rules or regulations, nor influence local decision-making bodies. This Court finds that changed circumstances after the permit has been approved provide an insufficient basis for denying the permit. And, should Great Lakes lack properly conveyed real estate, or lack the authority from appropriate agencies other than IDEM, then such deficiency will also prevent IDEM from allowing Great Lakes to operate if in fact such a condition is true.

Appellants' Appendix at 26–28.

The trial court found that the OEA's decision was not arbitrary and capricious. Specifically, the trial court found:

### Road Access and Traffic Safety

4. Petitioners have alleged that the OEA erred by finding that IDEM's

permit was properly issued notwithstanding Petitioner's allegations that a lack of road access should have precluded issuance of the permit.

5. The requirement to show road access is included in 329 IAC 11–9–2(h): Applications must include a plot plan or plans of the facility, including the following:

   (1) Access control measures such as fences, gates, or natural barriers.

   (2) A method of screening.

   (3) The general layout of the equipment

   (4) The traffic pattern.

   (5) **Road access**

   (6) Surface water drainage

   *Id.* (Emphasis added.)

6. The term "Road Access" is not defined in either statute or regulation. However, "access road" is defined in 329 IAC 11–2–2 as:

   "Access road" means a road that leads to the entrance of a solid waste processing facility, normally a county, state, or federal highway.

   *Id.*

7. The regulation only requires that the permittee submit an application that contains a plot plan that shows how the facility will have road access, i.e. how and/or where the facility will connect to local roads. The OEA interpreted the "road access" term in 329 IAC 11–9–2(h)(5) as "how the facility will connect to local roads." It is common sense that "road access" as part of a plot plan can be interpreted as the means by which the on-site road will connect to the access road. The OEA's interpretation was reasonable.

8. If the Solid Waste Management Board had intended for the permittee to show such a permit, it could have drafted the rule requiring such a heightened showing, but it did not. *See* 329 IAC 11–9–2(a)(12) (requiring verification of the receipt of proper zoning permissions).

9. Given the difference between the regulations requiring "road access" and those regarding zoning, IDEM has interpreted the requirement of road access to mean that the permittee must show how it will construct its internal road (the road on its facility) to connect to the access road, i.e. the county road. Record, p. 410 (March 6, 2006 testimony of IDEM's engineer, Lawrence Mansue).

10. IDEM is interested in how traffic coming into the facility will access scales and how trucks will enter the facility through the doors of the Transfer Station. Record, p. 355.

11. IDEM's solid waste processing facilities rules specifically provide a provision stating that the permit issuance does not supersede local requirements:

   (a) The issuance of a permit does not:

      (1) convey any property rights of any sort or any exclusive privileges;

      (2) authorize any injury to persons or private property or invasion of other private rights or any infringement of federal, state, or local laws or regulations; or

      (3) preempt any duty or comply with other state or local requirements.

   329 IAC 11–11–4(a). This clarifies that the issuance of the Permit does not allow permittees to ignore local requirements, such as driveway permits, while allowing IDEM the freedom to not check on every local permitting requirement which will

invariably differ from county to county.

12. In light of the regulations as drafted and the protection of a regulation clarifying that the issuance of the Permit does not exempt a permittee from local requirements, the OEA's affirmation of IDEM's interpretation of the rule allowing the issuance of the permit without confirmation of the Driveway Permit is reasonable. The Petitioners therefore cannot show that the OEA's decision regarding "road access" is arbitrary and capricious.

13. Traffic and road maintenance are not issues within IDEM or the OEA's jurisdiction. The Petitioners therefore cannot show that the OEA's decision regarding the failure of those issues to form a basis for denying a solid waste permit is arbitrary and capricious.

*Id.* at 14–16.

■ On appeal, Appellants argue that the OEA's decision was arbitrary and capricious because IDEM should not have granted a permit to Great Lakes Transfer without a driveway permit. Any person who "constructs or operates a solid waste processing facility" must have "a solid waste processing facility permit." 329 IAC 11–9–1. The applicant must submit "[a] complete application for a solid waste processing facility permit," which includes, in part, the following information:

Applications must include a plot plan or plans of the facility, including the following:

(1) Access control measures such as fences, gates, or natural barriers.

(2) A method of screening.

(3) The general layout of the equipment.

(4) The traffic pattern.

(5) *Road access.*

(6) Surface water drainage.

Roads and buildings, on and within one-half (½) mile of the facility, must be shown. The plot plans and drawings required by this section must be drawn to scale. A bar scale must be shown on the plans to indicate the scale if size changes occur.

329 IAC 11–9–2(h) (emphasis added).

Great Lakes Transfer's plot plan in its August 2004 permit application apparently showed an on-site road connecting to the Porter–LaPorte County Line Road, over which Porter County has jurisdiction. In October 2005, Porter County denied Great Lakes Transfer's application for a driveway permit because "of the ten-ton weight limit on the road and the poor soils" under the road. Appellants' Appendix at 251, 254.

We note that the applicable regulations did not contain a requirement for an approved driveway access permit. *See* 329 IAC 11–9–2(h). Rather, the regulations required only a plot plan showing the road access. *Id.* IDEM points out that other parts of the regulations contain specific requirements for certifications from outside authorities. *See* IDEM's Appellees' Brief at 4 (noting that 329 IAC 11–9–2(a)(12) requires "[c]ertification verification from the zoning authority, or the county commissioners if there is no zoning authority, that proper zoning approvals have been obtained. . . .").

Moreover, we note that 329 IAC 11–11–4(a) provides:

The issuance of a permit does not:

(1) convey any property right of any sort or any exclusive privileges;

(2) authorize any injury to persons or private property or invasion of other private rights or any infringement of federal, state, or local laws or regulations; or

(3) preempt any duty to comply with other state or local requirements.

Regardless of the IDEM permit to Great Lakes Transfer, Great Lakes Transfer must still comply with other state and local requirements, including, for example, the requirement for a driveway permit.

We agree with the trial court that, given the relevant regulations, "the OEA's affirmation of IDEM's interpretation of the rule allowing the issuance of the permit without confirmation of the Driveway Permit is reasonable." Appellants' Appendix at 16. Thus, we conclude that the OEA did not err when it granted summary judgment to IDEM and Great Lakes Transfer on this issue, and the trial court did not err by affirming the OEA's decision.[3] *See, e.g., Boone County Res. Recovery,* 803 N.E.2d at 276 (holding that the OEA did not err by granting summary judgment but that the trial court erred by reversing the OEA).

### III.

■ The next issue is whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit when Great Lakes Transfer did not own the property at issue was not arbitrary and capricious. We first note that the Appellants did not present this issue in their petitions for administrative review. Ind.Code § 13–15–6–2 requires that the written request for appeal of an IDEM action to the OEA must "[s]tate with particularity the issues proposed for consideration at the hearing." Both the OEA and

the trial court noted that this issue was not properly presented. *See* Appellants' Appendix at 25 (OEA's order noting that "[t]o the extent that Petitioners and Intervenor have raised new issues not included in their Petitions for Review, this Court is not required to consider these issues"); Appellants' Appendix at 16 (trial court's order noting that "[p]roperty ownership was not raised in the Petitions for Administrative Review or Intervention and thus was not properly before the OEA"). Because Appellants did not raise this issue in their petitions for administrative review, this issue is waived.

Waiver notwithstanding, both the OEA and the trial court addressed this issue. Consequently, we will briefly address Appellants' contention. Appellants argue that Great Lakes Transfer's permit application did not properly identify the owner of the property. On this issue, the OEA found:

10. Petitioners claim that failure to demonstrate that Great Lakes had submitted a complete application as stated in 329 IAC 11–9–2 should result in overturning IDEM's decision to issue the permit. Petitioners allegations that Great Lakes' application was not complete included the following:

\* \* \* \* \*

c. Great Lakes provided land transfer information which did not comply with 329 IAC 11–9–2, and which

**3.** Appellants also argue that the OEA improperly excluded the affidavit of Porter County Engineer, David Schelling. The OEA ruled that the affidavit was cumulative of other evidence already in the record. The affidavit establishes that Porter County had denied Great Lakes Transfer's driveway permit, Schelling informed IDEM that the permit had been denied, and IDEM approved the permit

"knowing there was no road access and knowing that Porter County was not going to authorize road access." Appellants' Appendix at 81. We need not address Appellants' argument given our conclusion that the relevant regulations did not require a driveway permit to be included in the IDEM permit application.

had expired prior to submission to IDEM.

11.  329 IAC 11–9–2 states that "a complete application for a solid waste processing facility permit must consist of the following information submitted to the commissioner". The term "complete application" as used n 329 IAC 11–9–2 is not the initial submittal as challenged by Petitioners and Intervenor here. A complete application is an application that has all the required documents listed in 329 IAC 11–9–2 and therefore, may be deemed effective per 329 IAC 11–11–1–1. The Request for Additional Information commonly known as the RAI, was made after the initial submittal, which, under de novo review, may be considered by the Court.

12.  329 IAC 11–11–1–1(c) requires that the notice of the granting of a permit or the Notice of Approval must state that the permit will not become *effective* until:

(1) All financial responsibility documents have been executed and delivered to the commissioner in the form and amount specified; and

(2) any real estate transfers necessary to vest legal title of the real estate upon which the permitted activity is to occur in the name of the owner listed on the application have been completed, executed, and recorded and documents evidencing such transfer have been delivered to the commissioner.

13.  As construed together, these rules anticipate that real estate transfers and land use authorizations may not have been finalized at the time the Notice of Approval is issued. Therefore, at the time of the Notice of Approval final documents cannot be required and the Notice of Approval is not an illegal approval of a permit. A contrary interpretation would yield an absurd result. IDEM's analysis can be completed more efficiently when a current owner, versus a prior owner, submits a deed at the time of the effective date to submit a deed. A prior owner would not be responsible or liable for pollution or damages to the environment from violations of the permit because the permit would be issued to the name on the application and that is the name required to be on the deed per 329 IAC 11–11–1–1(c). Petitioners and Intervenors have not cited to evidence supporting their alleged permit deficiencies in the permit application which would deny the issuance of the Great Lakes permit as a matter of law. 329 IAC 11–11–1 in allowing the commissioner to "determine {} that the application is complete." Here, the commissioner determined that the application was complete by its issuance of the application. Petitioners and Intervenors have provided no evidence that IDEM was incorrect in determining that the application as complete when it was submitted to IDEM. 329 IAC 11–11–1(c) further prohibits the permit from becoming effective until an applicant complies with specified conditions, including documentation of a completed real estate transaction. By its limitation on permit effectiveness pending proof of compliance, the terms of 329 IAC 11–11–1(c) provide further indication that applicants are afforded some flexibility in finalizing the land transfers and land usage authorizations needed to accomplish a permit's terms. And, should such transactions require revision, depending upon the scope of revision, an approved permit modification would be required in advance of operation.

\* \* \* \* \*

18. Petitioners and Intervenor have requested that this Court decide that IDEM erred in issuing the permit because circumstances later changed, including conveyance of real estate to Great Lakes, driveway permit, road access and zoning and building permits. Petitioners and Intervenors have cited no authority requiring IDEM to review its permitting decisions prior to determining whether the permit may be effective per 329 IAC 11–11–1(c). Public policy is not served by requiring IDEM to review every issued permit, prior to receiving notice that a facility intends to commence operations, for changed circumstances. Furthermore, this Court cannot decide that IDEM erred based upon evidence that was not before IDEM at the time. The permit does not allow or give Great Lakes authority or permission to ignore local rules or regulations, nor influence local decision-making bodies. This Court finds that changed circumstances after the permit has been approved provide an insufficient basis for denying the permit. And, should Great Lakes lack properly conveyed real estate, or lack the authority from appropriate agencies other than IDEM, then such deficiency will also prevent IDEM from allowing Great Lakes to operate if in fact such a condition is true.

Appellants' Appendix at 26–28. Upon judicial review, the trial court found:

### Property Ownership and Local Zoning Issues

14. The OEA found that there was no genuine issue of fact with regard to property ownership. Property ownership was not raised in the Petitions for Administrative Review or Intervention and thus was not properly before the OEA.

15. Nevertheless, the sole issue on this matter that the OEA considered was whether 329 IAC 11–9–2(a)(10) requires that a property transfer occur prior to issuance of a permit approval.

16. 329 IAC 11–9–2(a)(10) states that a complete application for a solid waste processing facility permit includes: Documents necessary to establish ownership or other tenancy of, including an option to purchase, the real estate upon which the facility to be permitted is located, including ... the deed and evidence satisfactory to the Commissioner that ownership will be transferred to the owner prior to operation of the facility. This rule does not state that the applicant must own the property on which the transfer station will be located when a permit application is complete. It states that the applicant must provide *"evidence satisfactory to the Commissioner* that ownership will be transferred to the owner prior to operation of the facility"* (emphasis added). The documents provided to IDEM in Great Lakes Transfer's permit application, which included a purchase agreement, were "evidence satisfactory to the Commissioner" that ownership would be transferred prior to operation of the facility.

17. The OEA concluded, reasonably, that the rules promulgated by the Solid Waste Management Board contemplate and expect that a permit applicant will not have finalized the appropriate property transfers at the time a permit is applied for, or even by the time a permit to construct is issued.

18. The OEA Order finding that the ownership of the land at the time of

permitting was an invalid basis for denying the Permit is supported by substantial evidence and law.

*Id.* at 16–17.

■ 329 IAC 11–9–2(a)(2) requires that the permit application contain the name and address of the property owners, and 329 IAC 11–9–2(a)(11) requires that the application contain:

Documents necessary to establish ownership or other tenancy of, including an option to purchase, the real estate upon which the facility to be permitted is located, including a certified copy of the deed to the subject real estate showing ownership in the person identified as the owner in the application, or the deed and evidence satisfactory to the commissioner that ownership will be transferred to the owner prior to operation of the facility.

The August 2004 permit application identified Great Lakes Transfer as the owner of the property but also included an agreement for sale and purchase of the property from Darren and Gina Kaletha that was executed on July 26, 2004, and expired on October 29, 2004.

Appellants contend that Great Lakes Transfer should have supplemented the application with a deed showing completion of the land purchase or a new agreement for purchase of the land and that the permit should not have been issued without this information. The regulations contemplate that the applicant may not have ownership of the property at the time the permit is issued. 329 IAC 11–11–1(c) provides:

The notice of the granting of a permit must state that the permit will not become effective until:

(1) all financial responsibility documents have been executed and delivered to the commissioner in the form and amount specified; and

(2) any real estate transfers necessary to vest legal title of the real estate upon which the permitted activity is to occur in the name of the owner listed on the application have been completed, executed, and recorded and documents evidencing such transfer have been delivered to the commissioner.

In compliance with this regulation, the IDEM permit issued to Great Lakes Transfer specifically noted that the permit was not effective until:

[A]ny real estate transfers necessary to vest legal title of the real estate upon which the permitted activity is to occur in the name of the owner listed on the application have been completed, executed, and recorded and documents evidencing such transfer have been delivered to IDEM or proof of the applicant's agreement regarding the leasing of this property has been submitted to IDEM.

Appellees' Appendix at 481.

Given these regulations, the OEA concluded that IDEM's issuance of the permit was proper, and the trial court concluded that OEA's decision was reasonable. We agree and conclude that the trial court did not err.

## IV.

■ The next issue is whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit when Great Lakes Transfer's building permit was later rescinded was not arbitrary and capricious. On this issue, the OEA found:

17. LaPorte County has raised analogous issues concerning the zoning and building permits issued to Great Lakes. LaPorte County has since noted that Great Lakes' zoning or building permits status has changed. The LaPorte County Plan Commis-

sion and Board of Zoning Appeals is vested with enforcing its own zoning and building issues, not this Court. Ind.Code § 36–7–4 et seq. IDEM requested, and received proper documentation relating to the zoning and building permits for the site. Mansue Test., pp. 11–12. LaPorte County has the jurisdiction to challenge the validity of the zoning or building permits, not this Court. The lack of appropriate zoning and/or building permits will also prevent IDEM from allowing the Great Lakes to operate if in fact that condition is true.

18. Petitioners and Intervenor have requested that this Court decide that IDEM erred in issuing the permit because circumstances later changed, including conveyance of real estate to Great Lakes, driveway permit, road access and zoning and building permits. Petitioners and Intervenors have cited no authority requiring IDEM to review its permitting decisions prior to determining whether the permit may be effective per 329 IAC 11–11–1(c). Public policy is not served by requiring IDEM to review every issued permit, prior to receiving notice that a facility intends to commence operations, for changed circumstances. Furthermore, this Court cannot decide that IDEM erred based upon evidence that was not before IDEM at the time. The permit does not allow or give Great Lakes authority or permission to ignore local rules or regulations, nor influence local decision-making bodies. This Court finds that changed circumstances after the permit has been approved provide an insufficient basis for denying the permit. And, should Great Lakes lack properly conveyed real estate, or lack the authority from appropriate agencies other than IDEM, then such deficiency will also prevent IDEM from allowing Great Lakes to operate if in fact such a condition is true.

Appellants' Appendix at 28. Upon reviewing this issue, the trial court found:

19. The Record also contains substantial evidence that Great Lakes obtained and submitted to IDEM the proper proof that it had a special exemption and building permit. Record, p. 328. *See also* Record, p. 308 (letter from Attorney of the LaPorte County Board of Zoning Appeals.).

20. LaPorte County alleged during the stay hearing before the OEA that a local hearing would rescind the zoning and building permit. Record, p. 1410 (Questioning by Shaw Friedman). On March 21, 2006 a hearing was held concerning the special exemption and building permit, with the result that the BZA confirmed that Great Lakes' special exemption had not expired and a new building permit should be issued to Great Lakes. Record, pp. 326, 329 (motion by Ed Kogut, BZA member). The OEA did not act arbitrarily and capriciously in finding that the new information regarding a local hearing, after the permit was issued, was not a basis to overturn IDEM's decision.

21. The OEA's finding that Petitioners failed to submit evidence that Great Lakes' application did not contain sufficient information, truthful information, or adequate documentation to be complete was not arbitrary and capricious.

22. At the time that Great Lakes submitted the necessary zoning documentation, it was and continues to be valid. This was confirmed by a letter from the BZA Attorney, Robert C. Szilagyi. Record, p. 308.

23. IDEM requested and received proper documentation relating to the zoning and building permits for the site.

24. Petitioners' issues relating to local permitting only raise local issues outside of the jurisdiction of the OEA (many of which arose after IDEM issued the permit). They have not raised any issues to show that the issuance of the permit is contrary to statutes or regulations. Petitioners therefore fail to show that the OEA Order was arbitrary and capricious.

*Id.* at 28

The solid waste processing facility regulations require that the application submit the following information regarding local zoning approvals:

Certification verification from the zoning authority, or the county commissioners if there is no zoning authority, that proper zoning approvals have been obtained, and the following documents:

(A) A copy of the zoning requirements, if any, for solid waste facilities in the area where the facility is to be located.

(B) A copy of the improvement location permit or occupancy permit issued by the zoning authority having jurisdiction for the site if a solid waste facility is permitted by the zoning ordinance in the area where the facility is to be located.

(C) A copy of the amendment or amendments to the zone maps incorporated by reference into the zoning ordinance under IC 36–7–4–602(c) if a change in the zone maps is required for the area where the facility is to be located.

(D) A copy of the amendment or amendments to the zoning ordinance adopted under IC 36–7–4–602 if such amendment is required for the area where the facility is to be located.

(E) A copy of the variance, special exception, special use, contingent use, or conditional use approved under IC 36–7–4–918.1 through IC 36–7–4–921 if such approval is required for the area where the facility is to be located.

(F) The status of any appeals of any zoning determination as described in clauses (B) through (E) and, if none pending, the date by which such appeal must be initiated.

329 IAC 11–9–2(a)(12).

Great Lakes Transfer submitted documentation to IDEM that the LaPorte County Board of Zoning Appeals ("BZA") granted a special exception in December 2004 and that it received a building permit in July 2005. IDEM then granted the permit in November 2005. *After* the permit was already issued and the petitions for administrative review had been filed with the OEA, the BZA reconsidered the special exception and the building permit. On March 21, 2006, the BZA found that Great Lakes Transfer was not in violation of the special exception but that the building permit had a technical violation because Great Lakes Transfer was not the owner of the property at the time of the issuance. The BZA rescinded the building permit and gave Great Lakes Transfer until December 31, 2006, to obtain all necessary IDEM and driveway permits. Great Lakes Transfer was then required to submit the necessary permits to the LaPorte County Building Commissioner and receive a revised building permit.

On appeal, Appellants contend only that "Great Lakes [Transfer] should not be rewarded with the issuance of a permit when the information it submitted in its application was obtained through repeated misrepresentation of legal records." Appellants' Brief at 26. However, as noted above, at the time IDEM issued the per-

mit, Great Lakes Transfer had a valid special exception and building permit. The BZA's reconsideration occurred months after IDEM had already issued the permit. We agree with the OEA's finding that "this Court cannot decide that IDEM erred based upon evidence that was not before IDEM at the time." Appellants' Appendix at 28.

Furthermore, the issuance of the permit by IDEM does not "preempt any duty to comply with other state or local requirements." 329 IAC 11–11–4(a). Great Lakes Transfer still had the duty to obtain a valid special exception and building permit. The issuance of an IDEM permit does not bypass these requirements. Without the special exception and building permit, Great Lakes Transfer would not be permitted to construct and operate the facility. We conclude that the OEA's decision was not arbitrary and capricious and that the trial court did not err.

## V.

■ The next issue is whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit despite wetlands concerns was not arbitrary and capricious. Appellants argue that, in granting the permit to Great Lakes Transfer, IDEM ignored wetlands issues. Again, Appellants did not present this issue in their petitions for administrative review, and the issue is waived.

■ Waiver notwithstanding, the OEA addressed the issue and found:

20. The Towns raised issues concerning the wetlands surrounding the Transfer Station. IDEM considered the potential for pollution when issuing the Permit. All waste processing is to occur within a building. Testimony of Lawrence Mansue, March 6, 2006 ("Mansue Test.") p. 8, 1. 8. The operation plan of the Transfer Station deals with liquid wastes that will be collected and will never reach potential wetlands. Id. at p. 17, II. 4–18. IDEM considered the wetland delineation ·submitted by Great Lakes and determined that neither the construction nor the operation of the Transfer Station will impact wetlands. Id. at p. 18, II. 3–8. Furthermore, the issuance of the Permit does not authorize Great Lakes to impact wetlands or to discharge pollutants into wetlands, and Great Lakes would be subject to an enforcement action by IDEM if it were to do so. Id. at p. 18, II. 12–18. The Towns have introduced no evidence to rebut IDEM's determination that the Transfer Station is not designed or will be operated in a manner that will impact wetlands in the area. Unsupported general concerns are not sufficient to establish that a party is aggrieved or adversely affected.

21. IDEM must presume that any person that receives a permit will comply with the applicable regulations. The OEA will not overturn an IDEM approval upon speculation that the regulated entity will not operate in accordance with the law. In the Matter of: 327 Article 3 Construction Permit Application Plans and Specifications for Sidney Wastewater Treatment Plant and Sanitary Sewer System Permit Approval No. 16684, 2004 In. Env. Lexis 22 (Ind.Off.Env.Ajdud., November 5, 2004).

22. Petitioners' concerns seem to be with the damages that the proximity of the transfer station operations might have on nearby wetlands. These types of damages are not within the jurisdiction of the OEA, but rather should be brought in a court of general jurisdiction such as a suit for damages or for injunctive relief. See

e.g. In the Matter of: Objection to the Issuance of Permit Approval No. 473–05 Mr. Perry Godlove, Godlove Enterprises, Inc., 2002 IN ENV LEXIS 14 (In.Off.Env.Adjud., Sept. 22, 2002)("The Office of Environmental Adjudication is an administrative court of limited, statutory jurisdiction and is not endowed with equity jurisdiction." Id. at *2); In the Matter of Objections to the Denial of Extension of Reply Period and Denial of Operating Permit Renewal for the Mallard Lake Landfill, 2004 IN ENV LEXIS 13 (In.Off.Env.Adjud., October 20, 2004)("This Office does not have the statutory authority to grant such a request [request for damages]" Id. at *1.)

Appellants' Appendix at 29–30. The trial court also addressed the issue and found:

### Wetland and Public Participation Issues

25. Petitioners have cited no authority, requirement or even a policy encouraging IDEM to require wetland information or to affirmatively initiate contact with the parks department personnel.

26. The OEA's finding that IDEM does not have the authority under the solid waste rules to require a wetland delineation report for a transfer station permit application is supported by the record. Record, pp. 417–418. IDEM does not have the authority to require the United States Army Corps of Engineers ("USCOE") to conduct or validate any wetland determinations in light of Great Lakes' determination that wetlands will not be impacted and IDEM's determination that the issuance of the Permit will not result in discharge of pollutants to either waters of Indiana or the United States. Record, p. 362. Petitioners did not

introduce any evidence or legal argument to the contrary. Further, this issue was not raised in the Petitions for Administrative Review or Intervention and thus was not properly before the OEA.

Id. at 18–19.

On appeal, Appellants cite no relevant authority demonstrating that a wetlands delineation report is required as part of a solid waste transfer facility application or that the facility would impact any wetlands. Moreover, Lawrence Mansue, an environmental engineer with IDEM, testified before the OEA that the submission of wetland delineation reports is not required in solid waste transfer facility applications. Mansue also testified that Great Lakes Transfer did submit a wetlands delineation report to IDEM, that the transfer station construction would not impact wetlands, and that the issuance of a permit would not authorize an impact on wetlands or authorize the discharge of pollutants into the waters. Given this evidence, we conclude that Appellants have failed to demonstrate that the OEA's decision was arbitrary and capricious.

## VI.

The final issue is whether the trial court erred in determining that the OEA's decision that IDEM properly granted a permit despite concerns of environmental justice and public participation was not arbitrary and capricious. Appellants seem to argue that IDEM ignored the concerns of environmental justice and public participation. On this issue, the OEA found:

8. Petitioners and Intervenor have also complained that IDEM's Environmental Strategic Justice Plan will be violated by issuance of the permit because residents of the area will be disproportionately affected by pollu-

tion. Petitioners and Intervenors have presented no evidence indicating that indeed the issuance of the permit will result in pollution or other negative environmental impacts upon the local residents that might trigger any environmental justice issues. Speculation that the transfer station may lead to additional pollution is again an operation issue that is not within the jurisdiction of the OEA. Petitioners and Intervenors have likewise not presented any evidence demonstrating how the Environmental Strategic Justice Plan is incorporated into the permitting process. The regulations governing issuance of transfer station permits does not allow IDEM to deny a permit based solely upon environmental justice issues. The existence of disputed facts concerning compliance with or violation of the Environmental Strategic Justice Plan present *no genuine issue of material fact as to whether the moving parties, Great Lakes and IDEM, are entitled to judgment as a matter of law.*

Appellants' Appendix at 26. The trial court then found:

### Environmental Justice and Public Participation

27. IDEM is required to give "notice" of the issuance of the permit. IND. CODE § 4–21.5–3–4(a). IDEM did this and Petitioners do not argue otherwise.

28. The record shows that the public was given the opportunity to comment, and in fact submitted written comments which were considered by IDEM. Record, pp. 364–365. *See also* Record, P. 1472 (Testimony of Dale Engquist, March 1, 2006, p. 96, indicating that he indeed did not submit comments to IDEM), Record p. 320 (IDEM's responsiveness summary

showing that it did consider public comments).

29. The OEA's finding that IDEM complied with its public notice requirements was reasonable.

30. The record shows that IDEM has implemented controls (through its regulations) requiring that the Transfer Station control waste water so that none will be discharged, but rather will be transferred to a local Sanitary District. Record, p. 320 (IDEM's responsiveness summary); *see also* Record, p. 361 (the Transfer Station, as designed, eliminates run-off pollution). All waste processing will occur inside buildings, designed to capture any liquids and wastes. *Id.*

31. Petitioners introduced no evidence whatsoever before the OEA that there will be pollution because of the operation of the Transfer Station—the OEA's finding that Petitioners failed to show that the Transfer Station will affect the Towns or that environmental justice should be a concern was therefore not arbitrary and capricious.

32. IDEM and Great Lakes have shown that the OEA Order granting IDEM's and Great Lakes' Motions for Summary Judgment was supported by substantial evidence and that Porter County, LaPorte County, and the Towns of Pines and Beverly Shores are not entitled to reversal or any further proceedings as a matter of law.

*Id.* at 19–20.

On appeal, Appellants contend that IDEM ignored concerns expressed by Pines that the solid waste transfer facility will impact its already contaminated water supply and concerns expressed regarding impacts to the Indiana Dunes National Lakeshore and Lake Michigan. In partic-

ular, Appellants argue that IDEM had a duty to investigate the concerns based upon Ind.Code § 13–14–1–2(c), which is part of the statutes that delineate the duties of IDEM and provides:

> The department shall conduct a program of continuing surveillance and inspection of the following:
>
> (1) Solid waste management sites.
>
> (2) Actual or threatened sources of environmental pollution by contamination, radiation, odor, or noise.

IDEM correctly points out that this statute is separate from and inapplicable to the permitting process at issue here.

Moreover, IDEM held a public hearing on the permit application, received significant public comments, and responded to the comments in a responsiveness summary, including the concerns at issue here. Appellants' Appendix at 159–162. Further, Appellants presented no evidence to the OEA that the proposed solid waste transfer facility would have an environmental impact. We conclude that Appellants have failed to demonstrate that the OEA's decision was arbitrary and capricious. *See, e.g., Boone County Res. Recovery,* 803 N.E.2d at 276 (holding that the OEA did not err by granting summary judgment but that the trial court erred by reversing the OEA).

For the foregoing reasons, we affirm the trial court's order.

Affirmed.

DARDEN, J., and NAJAM, J., concur.