# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW LANGENBACHER**
Indianapolis, Indiana

FILED
Oct 09 2012, 9:01 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA



| | | |
|---|---|---|
| INDIANA PUBLIC EMPLOYEE RETIREMENT FUND, | ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A04-1201-MI-2 |
| PAUL BRYSON, | ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-1103-MI-011706

**October 9, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Paul Bryson suffered back injuries while on-duty and became unable to perform his duties as a firefighter. After administrative proceedings, the Indiana Public Employees Retirement Fund Board ("PERF") determined Bryson was entitled to Class 2 impairment disability benefits pursuant to Indiana Code section 36-8-8-12.5. The trial court set aside PERF's decision and concluded Bryson was entitled to Class 1 impairment disability benefits. PERF appeals, raising the sole issue of whether the trial court erred by setting aside PERF's decision and concluding Bryson is entitled to Class 1 impairment disability benefits. Concluding the trial court did not err, we affirm.

## Facts and Procedural History

Beginning in 2001, Bryson was employed as a firefighter for the Brownsburg Fire Territory and was a member of the 1977 Police Officers' and Firefighters' Pension and Disability Fund (the "1977 Fund"). In 2008 and 2009, Bryson suffered a series of three injuries while working. On May 21, 2008, Bryson and other Brownsburg firefighters were attempting to reattach the firehouse bay door. Bryson stood on top of a ladder and "resist[ed] the force of a commercial garage door opener without getting knocked off" the ladder. Appendix of Appellee at 23. In the process, he felt a sharp pain in the left side of his lower back. Bryson sought medical attention that same day. Dr. Cyndi Speelman diagnosed Bryson with a lumbar strain, prescribed medication and a rehabilitative exercise plan, and restricted his physical labor for five days.

In her notes, Dr. Speelman also states, "[Bryson] denies any history of serious back injuries, though he has had occasional strains and sprains. He had a similar episode about 3 years ago (not work-related) for which he did not seek medical treatment and which resolved in a few days. He has also seen a chiropractor occasionally." Appendix of Appellant at 205 (parentheses in original). Lieutenant Thaddeus Dolzall, Bryson's supervisor, later testified that Bryson had never come to him before with a substantial injury, but that he did after the May 21 incident. Although Bryson was cleared to engage in regular work duties after a week of restricted activity, Lieutenant Dolzall also stated that Bryson's work performance slowed down in the months after the injury.

On December 17, 2008, another incident occurred. Bryson and other firefighters were performing "bailout drills," wherein a firefighter, wearing protective gear weighing at least sixty-five pounds, would jump out of a second story window and rappel down the side of the building using a rope that was wrapped around his waist. Bryson performed this drill, followed by a similar bailout drill that required jumping out of a window and getting to the ground using a ladder. When Bryson completed the second bailout drill, he was ordered to move the large ladder. Immediately after moving the ladder, Bryson took a step away from the ladder "and then just buckled. . . . just like a wounded animal. He just collapsed[.]" App. of Appellee at 38.

Bryson sought medical attention with Dr. Rebecca Peters, who diagnosed Bryson with a lumbar strain, prescribed medication, and restricted his ability to perform manual labor at

work for one week. Even after Bryson returned to unrestricted work, Lieutenant Dolzall stated that Bryson was obviously hurt and could not perform well.

On August 1, 2009, Bryson suffered a third incident while on duty. Bryson helped the department test a fire hose, which entailed pulling about three-hundred feet of a fire hose off a fire truck. Lieutenant Dolzall estimated the hose weighed approximately sixty to eighty pounds per one-hundred feet. After finishing the test, Bryson complained to Dolzall that he was in pain. The next morning he sought medical care. Dr. Keith Huff diagnosed Bryson with a left sacroiliac joint sprain and prescribed medication.

Bryson subsequently consulted with his own physician, Dr. Thomas Black, who diagnosed Bryson with degenerative disc disease and herniated disc syndrome. In September, Bryson also consulted with Dr. Van Evanoff, Jr., who prescribed vicodin, steroid injections, and physical therapy, and recommended Bryson return to work but not do any heavy lifting or repetitive bending. Ultimately, Dr. Evanoff determined Bryson's degree of impairment to be 0%. Bryson was also referred to Dr. Robert Huler, who performed an MRI and concluded the results demonstrated multilevel lumbar degenerative disk disease, two small disk herniations, and a small disk bulge. In his recommendations, Dr. Huler stated, "I do have a great concern that [Bryson] will continue to suffer recurrent injuries as his symptoms appear to be precipitated with relatively minor twisting motions most likely secondary to his known and pre-existent lumbar degenerative disk disease." App. of Appellant at 230.

4

Bryson requested a determination of disability with the Brownsburg Fire Territory's Local Pension Board. In March 2010, the Local Pension Board held a hearing and determined Bryson had a Class 1 covered impairment pursuant to Indiana Code sections 36-8-8-12.3(b) and -12.5(b). The 1977 Fund, however, issued a determination finding Bryson's impairment was Class 2 rather than Class 1. After Bryson appealed the Fund's determination, an administrative law judge ("ALJ") held a hearing and issued a recommended order including findings of fact and conclusions of law. The ALJ also concluded Bryson's impairment was a Class 2 impairment. PERF's medical consultant, Dr. Omkar Markland, reviewed Bryson's medical history. Dr. Markland informed PERF in a letter that "I agree with the evaluations conducted previously on Mr. Bryson by Dr. Evanoff and Dr. Huler. He has multi-level degenerative lumbar disk disease with probable herniation of lumbar disk. These degenerative changes have been pre-existing to the initial work-related injury he had in May 2008." Id. at 107. Dr. Markland also noted that at the time Bryson was functioning very well, but that even mild to moderate physical activity could aggravate his condition. For these reasons, Dr. Markland determined Bryson's degree of impairment to be 8%. PERF affirmed the ALJ's recommended order.

Bryson petitioned the trial court for judicial review, challenging PERF's conclusion. After a hearing, the trial court issued an order setting aside PERF's final order and concluding Bryson's impairment qualified as a Class 1 impairment. PERF now appeals. Additional facts will be supplied as appropriate.

5

## Discussion and Decision

### I. Standard of Review

Under the Administrative Orders and Procedures Act ("AOPA"), a court may reverse an agency's decision only if the agency action is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) contrary to constitutional right, power, privilege, or immunity;
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (4) without observance of procedure required by law; or
> (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). Appellate courts stand in the same position as the trial court, and review is limited to the issues set forth in the AOPA. Pendleton v. McCarty, 747 N.E.2d 56, 61 (Ind. Ct. App. 2001), trans. denied. "We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law de novo." Bd. of Comm'rs of LaPorte Cnty. v. Great Lakes Transfer, LLC, 888 N.E.2d 784, 789 (Ind. Ct. App. 2008). Statutory interpretation is a question of law. Id.

> In such [statutory] interpretation, the express language of the statute and the rules of statutory interpretation apply. We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result.

In re J.J., 912 N.E.2d 909, 910 (Ind. Ct. App. 2009) (quotation omitted). Although pension fund statutes should be liberally construed in favor of their intended beneficiaries, we should

6

not read into such statutes obligations against pension funds and the taxpayers which the legislature did not intend. Hilligoss v. LaDow, 174 Ind. App. 520, 529, 368 N.E.2d 1365, 1370 (1977).

## II. Indiana Code Section 36-8-8-12.5

The Indiana Code chapter governing the 1977 Fund provides the procedures for a member of the 1977 Fund to request disability benefits. Indiana Code section 36-8-8-12.3 provides that a hearing shall be conducted to determine whether a member has a covered impairment at the member's request. That section also provides "[a] covered impairment is an impairment that permanently or temporarily makes a fund member unable to perform the essential function of the member's duties . . . ." Ind. Code § 36-8-8-12.3(b).

Another section of that chapter provides:

(b) At the same hearing where the determination of whether the fund member has a covered impairment is made, the local board shall determine the following:
(1) Whether the fund member has a Class 1 impairment. A Class 1 impairment is a covered impairment that is the direct result of one (1) or more of the following:
    (A) A personal injury that occurs while the fund member is on duty.
    * * *
(2) Whether the fund member has a Class 2 impairment. A Class 2 impairment is a covered impairment that is:
    (A) a duty related disease. A duty related disease means a disease arising out of the fund member's employment. A disease shall be considered to arise out of the fund member's employment if it is apparent to the rational mind, upon consideration of all of the circumstances, that:
        (i) there is a connection between the conditions under which the fund member's duties are performed and the disease;
        (ii) the disease can be seen to have followed as a natural incident of the fund member's duties as a result of the exposure occasioned by the nature of the fund member's duties; and

7

> > (iii) the disease can be traced to the fund member's employment as the proximate cause; . . .
> > * * *
> (3) Whether the fund member has a Class 3 impairment. A Class 3 impairment is a covered impairment that is not a Class 1 impairment or a Class 2 impairment.

Ind. Code § 36-8-8-12.5(b).

It is undisputed that Bryson has a covered impairment. The issue is whether his covered impairment is Class 1, as he argues, or Class 2, as PERF argues. The parties do not point to, nor do we find, prior Indiana cases interpreting Indiana Code section 36-8-8-12.5(b). The ALJ reasoned that the requirement that a covered impairment be a "direct result" of a work injury in order to qualify as a Class 1 impairment necessitates that the work injury be the "sole and independent cause of the impairment." App. of Appellant at 97. Because the ALJ determined Bryson's covered impairment was a "progressive, pre-existing disease that may have been exacerbated by firefighting duties," the ALJ concluded Bryson's work injuries were not the sole and independent cause of his covered impairment, and therefore Bryson's impairment was not a Class 1 impairment.

The trial court, on the other hand, determined Bryson's covered impairment was "severe, and at times disabling back pain," but it also noted that "[e]ven a minor injury or an injury that merely aggravates pre-existing conditions can be a 'personal injury.'" Id. at 81-82. The trial court consequently concluded that "[w]hether one considers [Bryson]'s covered impairment to be 'back pain' or 'degenerative disc disease,' it is the direct result of his on duty injuries." Id. at 82.

8

PERF argues the ALJ's interpretation of Indiana Code section 36-8-8-12.5(b) was reasonable, and, as such, the trial court should have deferred to the ALJ's judgment. See LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1257 (Ind. 2000) ("An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself."); cf. Pierce v. State Dept. of Corr., 885 N.E.2d 77, 89 (Ind. Ct. App. 2008) ("[A]n agency's incorrect interpretation of a statute is entitled to no weight. If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action and the trial court is required to reverse the agency's action as being arbitrary and capricious.") (citations omitted). We disagree with the ALJ's interpretation of Indiana Code section 36-8-8-12.5(b).

The ALJ's interpretation of the statute is that it requires the on-duty injury to be the sole and independent cause of a resulting impairment in order for the impairment to be Class 1. In application, this would necessitate that the fund member was perfectly healthy and without any pre-existing conditions, at least in relation to the part of the body impacted by an on-duty injury, in order to qualify as Class 1. We do not think that an impairment being the "direct result" of a personal injury sustained while on duty requires this exclusivity. We conclude that a fund member who was able to perform his job duties before an on-duty injury despite having a pre-existing condition or health issue that preceded the on-duty injury, and who becomes unable to perform his job duties only after sustaining an on-duty injury, has an impairment that is the "direct result" of the physical injury or injuries sustained while on duty. This is so even if the on-duty injury created an impairment by exacerbating a pre-

existing condition, so long as the pre-existing condition did not previously prevent the fund member from performing his or her job duties.[1]

Bryson's supervisor testified that Bryson was one of the hardest working firefighters he oversaw prior to the series of on-duty injuries, and that he could not recall Bryson ever notifying him of any substantial injuries or bouts of pain in the seven years before these injuries. After his third injury, doctors concluded he had degenerative disc disease and that it pre-existed any of the injuries. While the only evidence in the record supports the fact that it was pre-existing, before the string of injuries Bryson was more than capable of performing his job duties, and after the injuries he became so impaired that he was determined to have a covered impairment for the purposes of Indiana Code section 36-8-8-12.3(b). Although Dr. Evanoff gave Bryson a 0% impairment rating, Dr. Markland determined his impairment rating was 8%. The ALJ's recommended order, which PERF affirmed, included a finding of fact that "Bryson's current condition is that he feels worse than he ever has. He cannot sleep, cannot sit comfortably, and cannot stand. When he rides a lawnmower it hurts because he bounces up and down. Bryson has not returned to work." App. of Appellant at 93. The evidence undisputedly shows Bryson had a pre-existing condition, but it also reveals his pre-existing condition did not impair his ability to work prior to the string of injuries here at

---

[1] PERF argues the trial court erred by not affirming the ALJ's finding that Bryson's covered impairment was degenerative disk disease because Bryson did not specifically object to that finding. Even if PERF is correct, we conclude such error would be harmless error because of our conclusion that Bryson's having had a pre-existing condition is immaterial to whether his impairment was the direct result of his on-duty injuries where his pre-existing condition in no way impacted his ability to perform his job duties prior to the injuries.

issue. Thus, we conclude Bryson's impairment was a direct result of the injuries that occurred while he was on duty, and he therefore has a Class 1 impairment.

## Conclusion

We conclude Bryson has a Class 1 impairment because despite having a medical condition that pre-existed his on-duty injuries, his pre-existing condition did not impair his ability to perform his job duties prior to the injuries. Thus, his covered impairment is the "direct result" of his three on-duty personal injuries for the purposes of Indiana Code section 36-8-8-12.5(b)(1) and the trial court did not err in setting aside PERF's determination otherwise.

Affirmed.

BAKER, J., concur.

BRADFORD, J., dissents with opinion.

11

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| INDIANA PUBLIC EMPLOYEE RETIREMENT FUND, | ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A04-1201-MI-2 |
| PAUL BRYSON, | ) ) | |
| Appellee-Petitioner. | ) | |

**BRADFORD, Judge, dissenting.**

I agree with the majority's statutory interpretation that an on-duty personal injury that exacerbates a pre-existing medical condition can "direct[ly] result" in a Class 1 covered impairment under Indiana Code section 36-8-8-12.5(b)(1). However, because I do not believe Paul Bryson's covered impairment satisfies that standard, I respectfully dissent.

Upon review, the record reveals that Bryson's covered impairment is degenerative disc disease, whereas his three on-duty personal injuries were diagnosed as lumbar strains. The record also shows that Bryson recovered from these injuries and was released to work accordingly without restriction. Most notably, after Bryson's third injury, "Dr. Evanhoff gave him an impairment rating of 0% of the whole body…." Appellant's App. p. 90.

Although the medical evidence suggests that Bryson's disease rendered him susceptible to recurrent lumbar strains and enhanced resulting pain, his three actual injuries

were labeled, "secondary." Appellant's App. pp. 90, 94. As such, "[Bryson's injurious] activities did cause him physical pain, but the changes seen in the lumbar spine are not the result of those incidents." Appellant's App. p. 93. His lumbar strains did not cause or exacerbate his degenerative disc disease. Consistent with this conclusion:

> When asked what keeps Bryson from performing the essential function of the firefighter, Dr. Markland agreed with Dr. Huler that Bryson is subject to acute bouts of pain. Because these bouts are transient, he can recover, but he is more prone to have pains in the future. Bryson is unable to perform as a firefighter because he has a greater possibility of exacerbating pain. Therefore in Dr. Markland's opinion, Bryson has a covered impairment.

Appellant's App. p. 93.

I would conclude that Bryson's personal injury did not exacerbate a pre-existing condition as required for Class 1 coverage. Rather, Bryson's degenerative disc disease puts him at risk of reinjury with debilitating pain. Given Bryson's safety-sensitive position as a firefighter, this risk renders him unable to perform the duties of his employment. The record supports the conclusion that, among other things, Bryson's work as a firefighter generally contributed to his degenerative disc disease. Therefore, he should be entitled to Class 2 coverage.

I would reverse the trial court's judgment and affirm the agency's decision on these other grounds.