The **INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,** Appellant–Respondent,

v.

**BOONE COUNTY RESOURCE RECOVERY SYSTEMS, INC., Robert H. Bankert, Greg Bankert, Cindy Russell, and John Bankert, Jr., Appellees–Petitioners.**

No. 06A01–0302–CV–49.

Court of Appeals of Indiana.

Feb. 16, 2004.

---

Steve Carter, Attorney General of Indiana, Sierra L. Cutts, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Carol Sparks Drake, Parr Richey Obremskey & Morton, Lebanon, IN, S. Gregory Zubek, Whitham, Hebenstreit & Zubek, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The Indiana Department of Environmental Management ("IDEM") challenges the trial court's judgment, which reversed the Indiana Office of Environmental Adjudication's ("OEA") grant of summary judgment against Boone County Resource Recovery Systems, Inc. ("BCRRS"), Robert Bankert ("Robert"), Greg Bankert ("Greg"), Cindy Russell ("Cindy") and John Bankert, Jr. ("John, Jr.") (collectively "the Bankerts"). IDEM presents several issues for our review, but we address a single dispositive issue, namely, whether the trial court erred when it reversed the OEA's summary judgment order.

We reverse.

### FACTS AND PROCEDURAL HISTORY

In 1977, Northside Sanitary Landfill, Inc. ("NSLI") was incorporated, and John Bankert, Sr. ("John, Sr.") served as its

president. NSLI had an operating permit for a sanitary landfill[1] operation in Boone County. John Jr. served as an officer and director of NSLI from 1970 until 1984, and he operated heavy equipment at the site; Cindy served as a director of NSLI from 1980 until 1992; Greg was a shareholder of NSLI and served as a heavy equipment operator, site foreman, and operations manager over a fifteen-year period; and Robert was a shareholder and employee of NSLI.

In May 1983, IDEM's predecessor, the Environmental Management Board ("EMB"), issued a Notice of Violation to NSLI for violating state environmental laws in connection with its operation of the landfill. According to the Notice, NSLI's operation of the landfill resulted in groundwater contamination, and the EMB directed NSLI to take certain measures to prevent further contamination.[2] On February 2, 1987, the Indiana Solid Waste Management Board ("the Board") found that the landfill "continues to release and threatens to release chemicals to the surface and groundwaters so as to significantly impair, threaten and pollute the environment of the State of Indiana in violation of IC 13–1–3–8 and 13–7–4–1(a), (b) & (f)."[3] And the Board concluded that "[d]ue to the business practices, waste management techniques and operational practices on the permitted landfill site, the nature of the substances placed on or disposed of in it, and the nature of the surface and subsurface in the area, a remedy is necessary in order to reasonably protect the public

health and environment." The Board ordered NSLI to fund the closure and postclosure costs for the landfill, to implement groundwater monitoring and leachate collection, and to pay civil penalties. (The parties refer to that order as "the N–95 order.") The Environmental Protection Agency eventually designated the landfill as a "Superfund" site under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–75 ("CERCLA"), after NSLI failed to comply with the N–95 order.

Meanwhile, in December 1983, Bankert Farms, Inc. ("BFI") was incorporated, and Greg served as president and treasurer of BFI. Greg was "generally in charge" of BFI. BFI operated a "clean fill" site.[4] The Bankerts were the sole shareholders of BFI. In May 1988, BCRRS was incorporated. Robert served as president of BCRRS, and his siblings served as officers and directors. BCRRS operated a waste transfer station and a container collection system, but eventually joined BFI in the operation of a clean fill site.

In 1992, the Trustees of the Northside Sanitary Landfill Site Trust Fund ("the Trustees"), who were overseeing the Superfund site, obtained a preliminary injunction requiring BFI and BCRRS to stop accepting solid waste at the clean fill site, which was adjacent to the Superfund site. The court specifically concluded that BFI was operating a sanitary landfill in violation of zoning laws. That cause is known as *Johnson v. Bankert Farms, Inc.*,

---

1. A sanitary landfill is a solid waste land disposal facility designed to accommodate general types of solid waste, excluding hazardous waste. *See* 329 IAC 10–2.5–1(b)(59).

2. There was evidence that NSLI had illegally accepted hazardous waste over a period of several years. The United States Environmental Protection Agency estimated that the

site contained 16 million gallons of hazardous waste.

3. Currently Indiana Code Sections 13–18–4–5 and 13–30–2–1.

4. "Clean fill" is defined as uncontaminated rocks, bricks, concrete, road demolition waste materials, and dirt. *See* 329 IAC 10–3–1.

BCRRS, NSLI, Patricia Bankert, Jonathan Bankert, Jr., Cynthia Russell, Robert Bankert, and Gregory Bankert ("Johnson v. BFI").[5]

In February 1997, BCRRS submitted an application to IDEM for a permit to operate a construction/demolition ("c/d") landfill in Boone County. In June 1997, BFI merged with BCRRS, but BCRRS did not notify IDEM of the merger. In December 1997, IDEM granted the permit, and the Trustees sought administrative review of that permit. The OEA concluded that BCRRS had not complied with certain statutory requirements for obtaining the permit, including its failure to disclose its merger with BFI. As such, the OEA declared the permit void. BCRRS did not appeal that decision.

Instead, in December 1998, BCRRS submitted a second application for a permit to operate a c/d landfill. BCRRS, as the applicant, and each of the Bankerts, as responsible parties,[6] submitted disclosure statements to IDEM under Indiana Code Section 13–19–4–2. That statute provides in relevant part that applicants and responsible parties must describe their experience in managing the type of waste that will be managed under the permit and all civil and administrative complaints against the applicant or responsible party for the violation of any state or federal environmental protection laws. The disclosure

statements submitted by the Bankerts revealed that they each had more than 20 years' experience in the management of solid waste, and they did not list any violations of environmental protection laws.

IDEM denied BCRRS' second application for a permit on the basis that "the applicant or responsible parties have knowingly and repeatedly violated state or federal environmental protection laws" in violation of Indiana Code Section 13–19–4–5(a)(5) (a provision of the "Good Character" law) and 329 IAC 10–11–1.[7] BCRRS sought administrative review of that denial, and IDEM moved for summary judgment. The OEA granted IDEM's motion for summary judgment. The OEA found and concluded in relevant part as follows:

> [T]he Commissioner could easily conclude BCRRS and its responsible parties, the Bankert children, have knowingly and repeatedly violated state environmental protection laws. The "knowingly" element is satisfied because BCRRS and the Bankert children are charged with knowledge of the laws of this state, especially in the highly regulated field of solid waste management.... "Repeatedly" is simply defined as "again and again." Here, both BCRRS and the Bankert children had more than one complaint filed against them.[8]

5. The trial court's order in *Johnson* does not refer to BCRRS by name, although BCRRS was named as a defendant. Regardless, in its brief in opposition to summary judgment, BCRRS states that it was subject to the injunction and that the *Johnson* court found that BCRRS had accepted "a few non-clean fill items at the clean fill site." Although BCRRS and BFI did not merge until 1997, it appears that they were running a clean fill site together in 1992.

6. Indiana Code Section 13–11–2–191 defines "responsible party" in relevant part as an officer, director, or senior management offi-

cial of a corporation that is an applicant for a permit under Indiana Code Section 13–19–4.

7. Because there is no substantive difference between Indiana Code Section 13–19–4–5(a)(5) and 329 IAC 10–11–1(c), and because IDEM's denial was expressly based primarily on the statute, we do not discuss the IAC section separately.

8. The OEA found that the N–95 order applied to the Bankerts, who served as officers, directors, or employees of NSLI. And the OEA found that because the Bankerts were respon-

The Environmental Law Judge concludes as a matter of law, based on the foregoing Undisputed Facts and Discussion, that: (1) [the Bankerts] are responsible parties for NSLI, BFI and BCRRS as the term is defined in Ind. Code 13–11–1–191; ... [and] (4) the Commissioner of IDEM properly denied BCRRS'[ ] permit application pursuant to Ind.Code § 13–19–[4–5] and 329 IAC 10–11–1(c)(3)[.]

BCRRS then sought judicial review of the OEA's decision. The trial court reversed the OEA's grant of summary judgment and held that BCRRS was entitled to summary judgment as a matter of law. The trial court found in relevant part as follows:

The Court concludes OEA erred, as a matter of law, in interpreting Ind.Code § 13–19–4–3 to require BCRRS and its responsible parties to describe [the N–95 order, *Johnson v. BFI*, and the Trustee's objection to BCRRS' first application] in their respective disclosure statements, as this is contrary to the plain and unambiguous language of this statute.

\* \* \*

The Court determines that in reaching its decision, OEA erroneously permitted a "guilt by association" concept to be read into the Good Character law which Indiana's legislature did not include. A denial based upon Ind.Code § 13–19–4–5(a)(5) requires that the knowing and repeated violations which form the basis for the denial have been committed by the applicant or one of its responsible

parties. To the extent OEA approved denying this permit because of environmental law violations found in N–95, this application of Ind.Code § 13–19–4–5(a)(5) impermissibly infringed upon the responsible parties' freedom of association by effectively holding them responsible for environmental violations NSLI committed, i.e., the company their father ran, rather than because of their own acts. The Court determines it would infringe upon the responsible parties' constitutional rights of association to deny them a permit because their father, John Bankert, Sr., committed environmental violations. *See Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

The court also found that the OEA erred when it concluded that the trial court's findings in *Johnson v. BFI* constituted evidence of a violation of environmental law. This appeal ensued.

## DISCUSSION AND DECISION

In *Family Dev., Ltd. v. Steuben County Waste Watchers, Inc.*, 749 N.E.2d 1243, 1256 (Ind.Ct.App.2001), this court set out the applicable standard of review as follows:

We initially observe that judicial review of an administrative decision is limited. Review of an agency's decision is largely confined to the agency record and the court "may not try the case de novo or substitute its judgment for that of the agency." Deference is to be given by the reviewing court to the expertise of the administrative body, and the deci-

sible parties for BFI, the *Johnson v. BFI* decision applied to them. While that decision involved a zoning violation, the OEA concluded that the trial court's finding "constitute[d]" a material violation of state environmental protection laws because the Bankerts did not have a state permit to operate a sanitary land-

fill. Finally, the OEA found that BCRRS and the Bankerts violated a state environmental law in 1997 when they failed to disclose the merger between BCRRS and BFI while IDEM was considering the first application for a c/d landfill permit.

sion should be reversed only if it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. Additionally, we note that an action is arbitrary and capricious only where there is no reasonable basis for the action. The challenging party has the burden of proving that an administrative action was arbitrary and capricious.

Finally, the reviewing court should neither substitute its judgment on factual matters for that of the agency, nor reweigh the evidence. Rather, the evidence is considered in the light most favorable to the administrative proceedings, and the agency's action will not be disturbed so long as there is substantial evidence to support the determination.

(Citations omitted).

IDEM is the state agency responsible for the regulation of and the issuance of permits for all landfills within the state. *See Indiana Dept. of Envtl. Mgmt. v. Chemical Waste Mgmt., Inc.,* 643 N.E.2d 331, 335 (Ind.1994). Indiana Code Section 13–19–4 is known as the "Good Character" law and sets out the requirements for the issuance, renewal, transfer or major modification of solid or hazardous waste permits. Indiana Code Section 13–19–4–5(a) delineates the grounds upon which IDEM may base a denial of an application for the issuance of such permits. The Commissioner of IDEM may deny a permit if he finds that:

(1) the applicant or a responsible party has intentionally misrepresented or concealed any material fact in a statement required by section 2 or 3 of this chapter; [9]

(2) a civil or administrative complaint described in section 3(a)(3) of this chapter has been filed against the applicant or a responsible party within five (5) years before the date of submission of the application;

(3) a criminal complaint described in section 3(a)(4) of this chapter has been filed against the applicant or a responsible party within five (5) years before the date of submission of the application;

(4) a judgment of criminal conviction described in section 3(a)(5) or 3(a)(6) of this chapter has been entered against the applicant or a responsible party within five (5) years before the date of submission of the application; or

(5) *the applicant or a responsible party has knowingly and repeatedly violated any state or federal environmental protection laws.*

(Emphasis added). Indiana Code Section 13–11–2–191 defines "responsible party" in relevant part as "an officer, a corporation director, or a senior management official of a corporation, partnership, limited liability company, or business association that is an applicant[.]" The Good Character law is silent regarding what, if any, level of personal involvement in conduct resulting in violations is required before IDEM may determine that a person has "knowingly and repeatedly" violated environmental protection laws.

■ IDEM is authorized to deny a permit based on a single ground enumerated above, even where IDEM has earlier con-

---

9. Those sections pertain to disclosure statements, wherein applicants and/or responsible parties must disclose certain information in-

cluding prior civil, criminal, and administrative complaints filed against them. *See* Ind. Code § 13–19–4–2 and –3.

cluded that a violation did not warrant suspending or revoking the applicant's existing Indiana waste management permit. *See Chemical Waste,* 643 N.E.2d at 336. And our supreme court has noted that the commissioner has broad powers to grant or deny permits "even where it is unclear that there exist any rational means for reaching a decision." *Id.*

Here, the trial court concluded in relevant part that IDEM's interpretation of Indiana Code Section 13–19–4–5(a)(5) was invalid. Indeed, because IDEM based its denial of BCRRS' application for a permit on that particular statutory provision, whether summary judgment was properly granted in favor of IDEM depends on the interpretation of that statute. The material facts are essentially undisputed. This court set out the applicable standard of review in *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003), as follows:

> Statutory interpretation is a question of law reserved for the court and is reviewed de novo. De novo review allows us to decide an issue without affording any deference to the trial court's decision. When a statute has not previously been construed, ... our interpretation is controlled by the express language of the statute and the rules of statutory construction. Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *When a statute is subject to different interpretations, the interpretation of the statute by the administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless that interpretation is inconsistent with the statute itself. When a court is faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, the court should defer to the agency. When a court determines that an administra-*

> *tive agency's interpretation is reasonable, it should "terminate[ ] its analysis" and not address the reasonableness of the other party's interpretation. Terminating the analysis recognizes "the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations."*

(Emphasis added, citations omitted).

The question is whether someone who previously has served as an officer, director, or employee of one or more corporations with histories of violating environmental protection laws can be designated a "responsible party" who has knowingly and repeatedly violated environmental protection laws under Indiana Code Section 13–19–4–5(a)(5). This is an issue of first impression for our courts.

In its denial of BCRRS' permit application, IDEM stated in relevant part as follows:

> As part of the permit application, the applicant and each person who is a responsible party with respect to the applicant must submit to the Department such information as required by IC 13–19–4–2. [BCRRS], as applicant, and [the Bankerts] as responsible parties, each submitted disclosure statements to the agency.

> Based on the IDEM's review of the disclosure statements, and an independent investigation to verify the information set forth in the disclosure statements as provided under IC 13–19–4–4, the IDEM hereby concludes and finds that the applicant or responsible parties have knowingly and repeatedly violated state or federal environmental protection laws, as referenced in IC 13–19–4–5(a)(5). The specific violations that form the basis of this finding are found in the

administrative proceeding captioned *Indiana Department of Environmental Management v. Northside Sanitary Landfill, Inc.,* Cause No. N–95, the matter of *Keith Johnson, et al. v. Bankert Farms, Inc., et al.,* (Boone County Superior Court, Cause No. 06D01 9205 CP 145), and the federal court case *United States of America v. Aluminum Company of America, et al.,* No. IP91–591–C M/S,[10] all of which cases are hereby incorporated by reference.

Thus, IDEM interpreted Indiana Code Section 13–19–4–5(a)(5) to mean that when a corporation violates environmental laws, its officers and directors may, under certain circumstances, be deemed responsible for those violations in the context of the Good Character law. The OEA adopted that interpretation in its findings and conclusions. But the trial court rejected IDEM's interpretation of the statute and concluded that the Bankerts could not be deemed responsible for NSLI's environmental law violations.[11]

In the context of judicial review of administrative action, our supreme court has resolved the issue of which of two conflicting statutory interpretations should be followed. As the court held in *Indiana Wholesale Wine & Liquor Co., Inc. v. State ex rel. Indiana Alcoholic Beverage Com'n,* 695 N.E.2d 99, 105 (Ind.1998), once an administrative agency's interpretation of a regulatory statute is deemed reasonable, the reviewing court shall terminate its analysis and not address the reasonableness of a conflicting interpretation. Here, we think that IDEM's interpretation of the statute is reasonable. As such, the trial court erred when it found otherwise and adopted BCRRS' conflicting interpretation.

The evidence is undisputed that John, Jr. and Cindy were officers or directors of NSLI when the EMB issued a Notice of Violation in 1983, and Cindy was still a director of NSLI when the Board issued the N–95 order in 1987. John, Jr.

---

**10.** Neither party addresses this federal court case in its brief on appeal in any detail, and the OEA did not make any specific finding with regard to this case. In its petition for judicial review of the OEA's decision, BCRRS bore the burden of demonstrating that IDEM had erred in relying on that case in its denial. *See* Ind.Code § 4–21.5–5–14. The only reference to the case in that petition is as follows: "IDEM, by relying upon Cause Nos. N–95 and IP91–591–C–M/S for its permit denial, effectively determined [the responsible parties] are tainted by their relationship with their father who was the key decision maker for [NSLI]." But BCRRS does not challenge the merits of the lawsuit, which apparently involved NSLI's violation of federal environmental protection laws. The trial court took judicial notice of the case at the hearing on BCRRS' petition for judicial review, but neither party included a copy of the case in its appendix on appeal.

**11.** The trial court also agreed with BCRRS and the Bankerts that IDEM's denial "impair[ed] their constitutional interests in repu-

tation." But, in light of our determination that the OEA properly granted summary judgment in favor of IDEM, we do not agree with that finding. *See Chemical Waste,* 643 N.E.2d at 340 (holding Good Character law does not impermissibly burden constitutional right to free association and expression of applicant).

And the trial court agreed with BCRRS and the Bankerts that IDEM was precluded from denying the permit since it had *granted* BCRRS a permit in 1997. BCRRS and the Bankerts contend that since IDEM determined they had "good character" in granting that permit only one year prior, they had no grounds to deny the second application. But the OEA found that because the first permit was declared void, due to BCRRS' failure to inform IDEM about the merger with BFI and to include certain financial documentation, that reliance is unfounded. We must agree. *See, e.g., id.* at 335–36 (noting IDEM's "broad powers" including discretion to deny permit "even where IDEM earlier concluded that the violation did not warrant suspending or revoking the applicant's existing ... permit.")

and Greg operated heavy equipment for NSLI, and Greg was a shareholder and also served as site foreman and operations manager over a fifteen-year period ending in the early 1990s. In addition, Greg was largely responsible for winding up NSLI's affairs in the late 1980s and early 1990s. In their disclosure statements submitted in 2000, each of the Bankerts stated they had "over twenty (20) years['] experience in the management of solid waste." Thus, their "experience in the management of solid waste" includes the years they spent as officers, directors, or employees of NSLI. In addition, the N–95 order states that "[t]hroughout the permitted lifetime of the [NSLI] landfill, either [John, Sr.] or [John, Jr.] ha[d] assumed full responsibility for the quality of landfill operation in a personal capacity or as an officer of [NSLI]."

John, Jr. and Cindy claim that they "merely followed instructions from their father[,]" who was the "decision maker" for NSLI. But BCRRS and the Bankerts do not cite to any authority, nor are we aware of any, to support their assertion that only "decision makers" can be found to have violated environmental protection laws under the Good Character law. Instead, this evidence bears on the issue of mitigating factors. *See* discussion below; *see also, Chemical Waste*, 643 N.E.2d at 340 (noting "[d]isassociation from an individual guilty of an environmental violation is only relevant as one of nine possible mitigating factors[.]").

Further, as we have already noted, Indiana Code Section 13–11–2–191 defines "responsible party" for the purposes of Indiana Code Section 13–19–4 to mean an officer or director of a corporation. A corporation acts through its officers and agents. *Utica Mutual Ins. Co. v. Precedent Cos., LLC*, 782 N.E.2d 470, 477 (Ind. Ct.App.2003). It is reasonable to conclude, as the OEA does, that a corporation's violation of environmental law can be attributed to its responsible parties in the context of Indiana Code Section 13–19–4–5(a)(5).[12] Indeed, given public policy considerations, chronic environmental law violators should be prevented from evading regulation merely by acting through different corporate entities. *See, e.g., Chemical Waste*, 643 N.E.2d at 340 (observing, in discussion of constitutional right to free association, "[c]ertainly, it is important whether a waste disposal company has owners or operators that have previously committed environmental crimes or delicts.").

Finally, the statutory scheme provides applicants and responsible parties with an opportunity to present evidence to IDEM that they were not involved with the decision-making that led to a corporation's violations of environmental laws. *See* Ind. Code § 13–19–4–6 (providing commissioner shall consider mitigating factors, includ-

---

12. We do not resolve the issue of whether the responsible corporate officer doctrine applies under the circumstances presented here. In *Indiana Dep't of Envtl. Mgmt. v. RLG, Inc.*, 755 N.E.2d 556 (Ind.2001), our supreme court "applied the responsible corporate officer doctrine to find a corporate officer personally liable for a corporation's violations of the Indiana Environmental Management Act regardless of whether the doctrine of piercing the corporate veil would produce personal liability." *Indiana Dep't of Envtl. Mgmt. v. Roland*, 775 N.E.2d 1188, 1193–94 (Ind.Ct. App.2002), *trans. denied.* IDEM contends that the doctrine applies here and supports its denial of the permit. But BCRRS maintains that the doctrine does not apply. Indeed, *RLG* involved a corporate officer's personal liability for civil penalties under Indiana Code Section 13–30–4–1. Because the statute at issue in this case, Indiana Code Section 13–19–4–5(a)(5), makes no reference to personal liability under Section 13–30–4–1, the holding in *RLG* is not dispositive of whether the doctrine applies here.

ing the nature and details of the acts attributed to the applicant or responsible party, and the "degree of culpability" of the applicant or responsible party). Here, IDEM expressly noted that it considered the statutory mitigating factors in denying the permit.[13] In light of the evidence and the statutory scheme, IDEM's interpretation of Indiana Code Section 13–19–4–5(a)(5) is reasonable.

In sum, IDEM did not abuse its broad discretion when it found that the Bankerts had knowingly and repeatedly committed environmental violations based on the evidence of violations committed by NSLI, BFI, and BCRRS. And the OEA did not err when it granted summary judgment in favor of IDEM.[14] We hold that the trial court erred when it reversed the OEA's grant of summary judgment.

Reversed.

BAKER, J., and MAY, J., concur.

**13.** The trial court concluded that IDEM was required to "articulat[e] the extent to which the mitigating factors entered into [its] decision[,]" but failed to do so. We cannot agree. In *Chemical Waste,* 643 N.E.2d at 341–342, our supreme court declared void a section of Indiana Code Section 13–7–10.2–4(c) (currently I.C. 13–19–4–7(b)) which stated that the commissioner is not required to explain the extent to which any of the mitigating factors influenced his decision to deny an application. The court held that "for the Commissioner to deny a permit application based on mere *pending complaints,* she must make a finding that . . . none of the mitigating factors are present, or are present but inadequate to justify the issuance of a permit." *Id.* at 341 (emphasis added). Here, because IDEM did not deny the permit based on pending complaints, it was sufficient for IDEM to state that it considered the mitigating factors under Indiana Code Section 13–19–4–7(b) in denying the permit.

**14.** In its brief on appeal, BCRRS focuses much of its argument on the issue of whether it, as applicant, and the Bankerts, as responsible parties, were required to refer to the N–95 order and *Johnson v. BFI* in their disclosure statements under Indiana Code Section 13–19–4–2. The OEA and the trial court also devoted much of their discussions to that issue. While IDEM could have denied the permit based on the alleged noncompliance with the disclosure requirements, *see* I.C. 13–19–4–5(a)(1), it expressly based its denial on its determination that "[t]he applicant or a responsible party has knowingly and repeatedly violated state or federal environmental protection laws as referenced in IC 13–19–4–5(a)(5)." As such, we need not address whether BCRRS and the Bankerts made misrepresentations in their disclosure statements.