

**FILED**

Dec 21 2018, 8:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Fred L. Cline
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dick Sears, *Appellant-Petitioner,* | December 21, 2018 |
| | Court of Appeals Case No. 18A-MI-883 |
| v. | Appeal from the Putnam Circuit Court |
| Indiana Grain Buyers and Warehouse Licensing Agency, *Appellee-Respondent.* | The Honorable Matthew Headley, Judge |
| | Trial Court Cause No. 67C01-1706-MI-236 |

**Altice, Judge.**

## Case Summary

[1] Between 2009 and 2016, Dick Sears (Sears), an Indiana farmer, deposited corn and soybeans with a grain elevator, Cline Grain, Inc. (Cline), which was licensed with the Indiana Grain Buyers and Warehouse Licensing Agency (the

IGBWLA).  On April 8, 2016, Cline financially failed, and the IGBWLA took possession of Cline for the purpose of determining payment owed to depositors, including Sears.  The IGBWLA determined that pursuant to Ind. Code § 26-3-7-2(5), which defines "claimant" under the relevant grain warehousing licensing law, Sears was entitled to payment for grain delivered to Cline in the twelve-month period prior to the elevator's failure, but he did not qualify as a "claimant" for grain delivered more than twelve months prior to the failure.  The IGBWLA, thus, denied Sears's claim for grain delivered before April 8, 2015.

[2] Sears administratively appealed, and an ALJ affirmed the IGBWLA's decision.  Sears appealed again, and the Ultimate Authority designated by the IGBWLA adopted the findings and order of the ALJ, but with an adjustment based on a statute enacted after the ALJ's decision, I.C. § 26-3-7-37.  Based on that statute, the Ultimate Authority found that Sears was entitled to payment for grain delivered after October 8, 2014, but not for grain delivered before that date.  Sears filed a petition for judicial review, and the trial court denied relief.  Sears filed the current appeal, raising the following restated issue:

> Whether the trial court properly determined that the IGBWLA's interpretation of the term "claimant," defined in I.C. § 26-3-7-2(5), was not arbitrary or capricious.

[3] We affirm.

# Facts & Procedural History[1]

Before we address the facts and history specific to Sears's case, we find that a brief overview of the grain warehousing licensing law is helpful to the analysis.

## *Grain Warehouse Licensing Law*

Many Indiana farmers deliver their harvested grain to a grain warehouse for either storage or sale. The Indiana Grain Buyers and Warehouse Licensing and Bonding Law, Indiana Code Chapter 26-3-7 (the Licensing Law) governs the licensing and regulation of Indiana grain buyers and warehouses. The Licensing Law contains numerous financial and reporting requirements for warehouse licensees in order to maintain a license with the State. The Licensing Law appoints the IGBWLA as the agency to administer the Licensing Law.

When an Indiana farmer, also referred to as a producer or depositor, delivers harvested grain to a licensed grain warehouse for storage, title to the grain remains with the producer until either he converts the grain to "grain for sale" or ships the grain to another location. While in storage it is the producer's grain, and the producer pays a storage fee. In contrast, in a grain for sale situation, the grain is sold, under several contract options, to the licensee. One

---

[1] We held a traveling oral argument in this case on November 8, 2018, at Purdue University at the Frances A. Cordova Recreational Sports Center. We commend counsel on the quality of their oral and written advocacy, and we thank Purdue University for hosting the event, as well as attendees for their insightful questions posed to the panel and counsel after the argument.

arrangement is referred to as "deferred pricing," under which a producer delivers the grain, title transfers to the licensee, and the price for the grain is determined and paid at a later date.[2] The grain that is the subject of this appeal originated as a deferred pricing transaction between Sears and Cline.

[7] In the circumstance where a licensed warehouse fails financially, the IGBWLA is charged with liquidating the failed licensee's assets and distributing the proceeds through a liquidation process set forth in I.C. § 26-3-7-16.5 (Section 16.5). During the liquidation process, producers are permitted to file claims at or after a hearing. I.C. § 26-3-7-16.5(c), (d). The director of the IGBWLA makes a determination as to the total proven storage obligation of each of the claimants and the loss sustained by each depositor who has proven a claim. I.C. § 26-3-7-16.5(e). The IGBWLA then makes distributions based upon certain statutory priorities and prorates the distributions to the extent there are insufficient funds to pay all claimants in full. I.C. § 26-3-7-16.5(g).

[8] For those claimants whose claim is not fully satisfied under the IGBWLA liquidation process, there is still a possibility of recovering some of their claim under the Indiana Grain Indemnity Program, set out in Ind. Code Chapter 26-4-1. It provides further protection for farmers who experience a loss as a result of the financial failure of a grain warehouse. If the farmer participated in the

---

[2] "'Deferred pricing' or 'price later' means a purchase by a buyer in which title to the grain passes to the buyer and the price paid to the seller is not determined: (A) at the time the grain is received by the buyer; or (B) less than twenty-one (21) days following delivery." I.C. § 26-3-7-2(7); *Appellant's Appendix Vol. IV* at 6 (ALJ Order).

Grain Indemnity Program, he may be considered a claimant under the program if he possesses a claim resulting from a failure of a licensed grain buyer or warehouse and the claim has been adjudicated by the IGBWLA.[3] I.C. § 26-4-1-5.

### Sears's Claim

[9] Sears is a farmer from New Salem, Indiana and, since at least 2009, he delivered harvested corn and soybeans to Cline, a grain elevator in Ladoga, Indiana. On April 8, 2016, Cline failed and surrendered its Indiana Buyer/Warehouse license to the IGBWLA. As a result, the IGBWLA, pursuant to Section 16.5 of the Licensing Law, took possession of Cline's business and initiated a claims procedure "for the purpose of settling outstanding accounts." *Appellant's Appendix Vol. III* at 17.

[10] A claims hearing was held on May 8, 2016, and potential claimants had the opportunity to discuss their claims with IGBWLA auditors and were permitted to make oral presentations regarding their claims at the hearing. On June 1, 2016, Sears timely submitted his Proof of Loss claim form. On August 8, 2016, the IGBWLA issued its Findings of Fact and Final Order (IGBWLA Order). In determining which claims qualified for payment and which did not, the

---

[3] Sears points out that "the claim adjudication process is important, not only because a claim denial prevents recovery from the assets of the licensee, but also recovery from the Grain Indemnity Fund." *Appellant's Appendix Vol. IV* at 39.

IGBWLA Order relied on I.C. § 26-3-7-2(5) (the Claimant Statute), which at that time defined "claimant" as follows:

> (5) "Claimant" means a person that is unable to secure satisfaction within the twelve (12) months following delivery of the financial obligations due from a licensee under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment.

Applying its interpretation of the Claimant Statute, the IGBWLA determined as follows with regard to claims:

> Cline Grain failed, and therefore closed, on April 8, 2016 making that the operative date for a number of matters including the date of loss being discovered, the price of grain for deferred pricing . . . *and the twelve month limit for claims is one year earlier, April 8, 2015*.
>
> * * * *
>
> *Therefore, any grain deposited with Cline Grain before April 8, 2015 does not qualify for payment*.

*Id.* at 18 (emphasis added). Applying the Claimant Statute, the IGBWLA bifurcated the many claims, including Sears's, into "Allowed Claims" for grain deposited on or after April 8, 2015, and "Denied Claims Over 12 Months" for grain deposited before April 8, 2015. *Id.* at 32, 76.

[11] With respect to Sears's particular claim, the IGBWLA determined that Sears qualified for some payment[4] based on his claim of $97,927.52, which represented 13,295.982 bushels of corn and 6232 bushels of soybeans that he delivered to Cline within the twelve-month period from April 8, 2015, through April 8, 2016. The IGBWLA determined that Sears did not qualify as a claimant for grain delivered between 2009 and 2014, and it therefore denied his claim for payment for 83,146.78 bushels of corn and 17,293.41 bushels of soybeans delivered to Cline between 2009 and 2014.[5]

[12] On August 26, 2016, Sears informed the IGBWLA that he wished to appeal the IGBWLA Order to challenge the determination that he was not entitled to payment for the grain delivered between 2009 and 2014. The narrow issue before the ALJ was "whether or not Dick Sears qualifies as a 'claimant' for grain that he delivered to Cline Grain before April 8, 2015." *Appellant's Appendix Vol. IV* at 2. After a December 16, 2016 hearing, the ALJ issued, on February 15, 2017, Recommended Findings of Fact, Conclusions of Law, Finding of Ultimate Fact and Order (ALJ Order), in which the ALJ concluded

---

[4] The IGBWLA Order advised that it only addressed the amount of loss that qualified for payment and that the actual amount to be paid to a claimant, or to a lienholder, would be "addressed later by a pro rata distribution of Cline Grain's bond and grain assets that have been obtained by [IGBWLA]." *Appellant's Appendix Vol. III* at 19. It continued, "The Indiana Grain Indemnity Fund distribution will be made to qualified recipients by the Board of the Indiana Grain Indemnity Corporation as provided for by Indiana Code article 26-5." *Id.*

[5] Sears had a lien against the grain because he had not been paid for the grain that he delivered to Cline under the deferred pricing transaction.

that "Sears is not a claimant as that term is defined in Ind. Code § 26-3-7-2(5), for grain he delivered to Cline Grain before April 8, 2015." *Id*. at 8.

[13] In reaching this conclusion, the ALJ examined the legislative history of the Claimant Statute. It recognized that, prior to March 2010, "claimant" was defined in I.C. § 26-3-7-2(5) as follows:

> "Claimant" means a person that is unable to secure satisfaction of the financial obligations due from a licensee under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment.

In March 2010, the legislature amended the definition of "claimant" so that I.C. § 26-3-7-2(5) read:

> "Claimant" means a person that is unable to secure satisfaction within the twelve (12) months following delivery of the financial obligations due from a licensee under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment.

[14] The ALJ observed that the parties focused on, and disagreed about, the meaning of the phrase "delivery of financial obligations" within the Claimant Statute. The IGBWLA's position was that "delivery of financial obligations" was synonymous with "delivery of grain" "because the delivery of grain creates a lien . . . which is a 'financial obligation' to either Mr. Sears or the IGBWLA." *Appellant's Appendix Vol. IV* at 10. The IGBWLA maintained that, under its reading, the amendment to the Claimant Statute established "a twelve month time bar" such that claims would not be paid for grain delivered earlier than the

twelve months before the licensee failed. *Id*. at 9. Sears, on the other hand, argued that "delivery of financial obligations" meant "when the depositor asks to be paid. If the depositor is not paid on demand, a financial obligation to the depositor arises." *Id*. Under Sears's reading, the statute excluded those depositors who were satisfied/paid within one year after "delivering the financial obligations to the licensee," which occurred by requesting return of grain or requesting payment. *Id*.

[15] The ALJ agreed with the IGBWLA's position and explained:

> [A]t the time grain is delivered to a warehouse, a lien "attaches in favor" of claimants possessing proof of grain that is owned, stored, or sold by the licensee. Ind. Code § 26-3-7-16.8(a)(1)-(4). The lien becomes effective upon delivery of the grain for storage or sale. Ind. Code § 26-3-7-16.8(b)(1)-(3). If the licensee fails, a lien is assigned to the IGBWLA and is enforced and allocated against a licensee's grain assets by the IGBWLA director. For that reason the delivery of grain, even in a deferred pricing transaction, is a legally significant event. Title transfers to the grain dealer and a lien right in the depositor is created. *The delivery of grain, therefore, equates to the "delivery of financial obligations" and as a consequence, the twelve month time limitation begins when the producer delivers the grain*.

*Id*. at 11-12 (emphasis added). Based on that interpretation, the ALJ determined "that claimants seeking reimbursement from the IGBWLA or the Indiana Grain Indemnity Fund must have delivered their grain to the licensee within one year of its failure," and it affirmed the IGBWLA's Order that denied Sears's claim for grain delivered before April 8, 2015. *Id*. at 13.

[16] Sears appealed the ALJ's decision to the Ultimate Authority designated by the IGBWLA. The parties agreed that "there was a basic question of law to resolve, namely whether or not Mr. Sears legally qualifies as a 'claimant' for grain that he delivered to Cline Grain before April 8, 2015." *Id.* at 26. On May 4, 2017, the Ultimate Authority issued Findings of Fact, Conclusions of Law, and Final Order (Final Order), which adopted the overall recommendations of the ALJ and concluded that "Sears . . . does not qualify as a claimant for grain delivered before the bar date as established in Ind. Code [Chapter] 26-3-7." *Id.* at 26. The Ultimate Authority, however, observed that since the issuance of the ALJ's Order dated February 15, 2017, the Indiana legislature had amended Ind. Code Chapter 26-3-7 to add a new section, I.C. § 26-3-7-37 (Section 37). Section 37 became effective in April 2017[6] and provided in relevant part:

> Notwithstanding any other law, a claimant who delivered grain to a first purchaser for sale or storage under a bailment to a failed licensee beginning October 8, 2014, and ending April 8, 2015, shall be considered by the director or the director's designated representative in determining the total proven storage and financial obligations due to depositors and the loss sustained by each depositor who has proven a claim.

[17] The Ultimate Authority determined that Section 37 was to be applied retroactively, and it ordered the IGBWLA to "consider Mr. Sears a claimant for

---

[6] This statute was effective from April 24, 2017 until June 30, 2018.

all grain delivered to Cline Grain after October 8, 2014." *Appellant's Appendix Vol. IV* at 26. In its Final Order, the Ultimate Authority observed:

> Clearly, law makers view [the Claimant Statute] as establishing a twelve month time bar as argued by IGBWLA in this case and they chose to extend that time frame during the 2017 legislative session.

*Id.* at 33.

[18] On June 2, 2017, Sears filed a Verified Petition for Judicial Review of the IGBWLA's denial of Sears's claim "for all grain delivered by Sears to Cline Grain, Inc. prior to October 8, 2014," arguing that "[a]ll of Sears'[s] claim satisfies the statutory definition of claimant found in IC 26-3-7-2(5)" and that "IGBWLA's interpretation of I.C. 26-3-7 as applied to Sears'[s] claim [] is arbitrary, capricious, and [an] abuse of discretion, and otherwise not in accordance with law[.]" *Appellant's Appendix Vol. II* at 11-12. Sears asked for an order declaring that he is a "claimant" for the portion of the claim related to grain delivered to Cline prior to October 8, 2014. On March 8, 2018, the trial court issued the following order:

> Court, upon review of the briefs and the ALJ's decision, now finds and concludes that Claimant/Sears shall be considered a Claimant for purposes of this matter between the dates of October 8, 2014 through April 8, 2016.
>
> Court finds and concludes that the agency's interpretation is not arbitrary or capricious, not contrary to constitutional rights, and is supported by the evidence pursuant to I.C. 4-21.5-5-14(d).

As such, Court den[ies] Petitioner/Claimant[']s petition for interpretation different than that of the agency.

*Id*. at 8. Sears now appeals.

# Discussion & Decision

[19] Judicial review of an administrative decision is limited under the Administrative Orders and Procedures Act (AOPA). *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 809 (Ind. 2004). We may set aside an agency action only if it is

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.

Ind. Code § 4-21.5-5-14(d). The party seeking judicial review bears the burden of proving that the agency action is invalid for one of the five reasons. *Jay Classroom Teachers Ass'n v. Jay Sch. Corp.*, 55 N.E.3d 813, 816 (Ind. 2016). An action is arbitrary and capricious only where there is no reasonable basis for the action. *Ind. Dep't. of Envtl. Mgmt. v. Boone County Res. Recovery Sys., Inc.*, 803 N.E.2d 267, 272 (Ind. Ct. App. 2004), *trans. denied*.

[20] Here, the parties agree that the issue is purely a matter of statutory interpretation. When reviewing an agency's interpretation of a statute, our standard of review is de novo, and we "accord the administrative tribunal no

deference." *NIPSCO Indus. Grp. v. N. Indiana Pub. Serv. Co.,* 100 N.E.3d 234, 241 (Ind. 2018). The goal of statutory interpretation is "to ascertain and give effect to" the intent of the legislature. *21st Amendment, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 84 N.E.3d 691, 696 (Ind. Ct. App. 2017), *trans. denied*. The best evidence of legislative intent is the statutory language itself, and we strive to give the words in a statute their plain and ordinary meaning. *Id.* (quotations omitted). "A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words." *Id.* at 696-97. We presume that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* at 697.

[21] We are tasked today with reviewing the IGBWLA's interpretation of the then-existing Claimant Statute, which read:

> "Claimant" means a person that is unable to secure satisfaction within the twelve (12) months following delivery of financial obligations due from a licensee under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment.

I.C. § 26-3-7-2(5). The IGBWLA Order disallowed that portion of Sears's claim associated with grain that he had delivered to Cline before April 8, 2015 –

one year before the failure.[7] *Appellant's Appendix Vol. III* at 18. The ALJ affirmed the IGBWLA's interpretation, as did the Ultimate Authority, but due to the interim passage of Section 37, the Ultimate Authority directed the IGBWLA to consider Sears a claimant for all grain delivered to Cline Grain after October 8, 2014. The trial court on judicial review concluded that the IGBLWA's interpretation was not arbitrary or capricious, not contrary to constitutional rights, and was supported by the evidence. Although Sears urges that, for various reasons, the IGBWLA's interpretation of the Claimant Statute was erroneous, we agree with the trial court's decision.

[22] We begin by observing that, effective March 2010, the legislature amended the definition of "claimant" by adding the words indicated in bold:

> "Claimant" means a person that is unable to secure satisfaction **within the twelve (12) months following delivery** of financial obligations due from a licensee under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment.

The parties agree on appeal that the added phrase reflects an intention to add a limitation, but they disagree over the meaning and effect of the inserted phrase.

[23] The IGBWLA argues that, in reference to "within twelve months following delivery," what is being "delivered" is grain, such that claims would not be paid

---

[7] The IGBWLA's Order reflects that 189 producers were entitled to "some payment," and five were entitled to "no payment because of the twelve month limitation." *Appellant's Appendix Vol.* III at 19, 30.

for grain that was delivered more than twelve months before the licensee fails. Sears, on the other hand, argues that the 2010 amendment "was not seeking to create a bar date to exclude certain depositors' claims." *Appellant's Brief* at 23. Rather, he argues that a plain reading of the statute's language shows that what is being "delivered" are financial obligations, which, he explains, arise when the producer asks the licensee to be paid. Under Sears's reading, a producer would qualify as a claimant if he was *unable* to secure satisfaction of financial obligations due from a licensee within twelve-months after asking for payment. As explained below, however, we find that Sears's position strings together words in the Claimant Statute – "delivery of financial obligations" – which were not intended to be connected in such a way, and instead, we find that the IGBWLA's determination was correct.

[24] The IGBWLA's construction, which is that the "within twelve months following delivery" phrase was intended to and did serve as a limitation on grain for which a producer could be reimbursed, is consistent with and supported by the legislative history of the statute, including subsequent history. As we have observed, "Legislative intent may be identified and effectuated by . . . changes made to the law since its enactment and the reasons for those changes." *Miller Brewing v. Bartholomew County*, 674 N.E.2d 193, 205 (Ind. Ct. App. 1996), *trans. denied*. Here, after the May 2016 claims hearing, which limited reimbursement for grain that was delivered on or after April 8, 2015, and in response to the Cline warehouse failure, the legislature enacted Section 37, which extended the time frame for which a producer could be compensated,

extending it from April 8, 2015 back to October 8, 2014.  In full, Section 37 provided:

> Notwithstanding any other law, a claimant *who delivered grain* to a first purchaser for sale or storage under a bailment to a failed licensee *beginning October 8, 2014, and ending April 8, 2015*, shall be considered by the director or the director's designated representative in determining the total proven storage and financial obligations due to depositors and the loss sustained by each depositor who has proven a claim.

(Emphasis added).  The legislature's action in this regard did two things:  (1) it effectively recognized the existence of the one-year limitation in the Claimant Statute, *i.e.*, a person was a "claimant" only for grain that was delivered within one year of the warehouse's failure, and (2) it extended that look-back period from April 8, 2015 to October 8, 2014.  The clear implication of Section 37 is that the Claimant Statute as written allowed a claim only for grain that was delivered on or after April 8, 2015 – one year before the failure – and the legislature wanted to extend that one-year limitation.

[25]   Also, pursuant to the same legislative action, the legislature changed the definition of "claimant" in the Claimant Statute, removing the previously-inserted "within twelve months following delivery" phrase, such that a claimant was defined beginning in April 2017 as "a person to whom a licensee owes a storage or financial obligation under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment."  I.C. § 26-3-7-

2(6).[8]  Further, the same bill that struck the twelve-month provision from the definition of "claimant" simultaneously added a separate fifteen-month time-bar provision in another section, codified at I.C. § 26-3-7-16.5(e) (Subsection 16.5(e)).  Thus, the legislature changed the twelve-month bar to fifteen months and relocated that time limitation to Section 16.5.  Specifically, Subsection 16.5(e) provides:

> (e) Only *grain that has been delivered* to a first purchaser licensee for sale or storage under a bailment *not more than fifteen (15) months before the date of failure* of the licensee may be considered by the director or the director's designed representative in determining the total proven storage and financial obligations due to depositors and the loss sustained by each depositor who has proven a claim.

(Emphasis supplied).  The foregoing legislative action reflects that, as the IGBWLA had found, the "within twelve months following delivery" language in the Claimant Statute was intended to create a twelve-month limitation, precluding recovery on claims for grain deposited more than twelve months before the warehouse's failure.

[26]  We find that our decision is also supported by the language used in other sections of the Licensing Law.  Sears's position – which maintains that the

---

[8] P.L. 145-2017 (H.E.A. 1237) amended the Claimant Statute as follows: "Claimant" means a person that is unable to secure satisfaction within the twelve (12) months following delivery of the financial obligations due from **to whom** a licensee **owes a storage or financial obligation** under this chapter for grain that had been delivered to the licensee for sale or for storage under a bailment.

Claimant Statute concerned "delivery of financial obligations," not delivery of grain – fails to account for the fact that the prior version of the statute read "unable to secure *satisfaction of financial obligations* due from a licensee." I.C. § 26-3-7-2(5) (emphasis added). That is, it was "financial obligations" that were "satisfied." Although the legislature in 2010 inserted the phrase "within twelve months following delivery" in the midst of the "satisfaction of financial obligations" phrase, we find that it is still financial obligations that are being satisfied and that "delivery" does not refer to delivery of financial obligations, as Sears suggests, but rather refers to delivery of something else. As the IGBWLA observes, the word "delivery" is repeatedly used throughout the Licensing Law in connection with the delivery of grain. *See e.g.*, I.C. § 26-3-7-2(10) ("'Depositor' means . . . [a] person that delivers grain to a licensee"); I.C. § 26-3-7-18(a) (permitting licensee "to deliver grain previously received"); I.C. § 26-3-7-22 (stating that "same type of grain delivered" may be commingled); I.C. § 26-3-7-26(2) (providing that "[e]very ticket issued shall embody within its terms . . . the date the grain was delivered").

[27] Similarly, we observe that, in Section 37 and in Subsection 16.5(e), grain is what is being "delivered" ("grain delivered to a licensee beginning October 8, 2015 and ending April 8, 2015," and "grain delivered not more than fifteen months before the date of failure"). Thus, the language of other sections within the Licensing Law makes clear that grain, not financial obligations as Sears argues, is what the legislature was referring to when in 2010 it inserted the "within twelve months of delivery" phrase into the Claimant Statute.

[28]     In opposing the IGBWLA's interpretation of the Claimant Statute, Sears argues that, prior to the enactment of Subsection 16.5(e), "there was no statutory basis" to exclude a claim based upon the date that the grain was deposited. *Appellant's Brief* at 14. He maintains that Section 16.5 is the section of the Licensing Law that governs the claims process, and because that section contained "no mention of limiting or barring claims based upon the date grain was deposited," no such bar existed. *Id*. at 13. We do not disagree that Section 16.5 was the more logical location for any limitation, and indeed the legislature later moved it there, but the fact that the limitation appeared initially in another section does not preclude our determination that a twelve-month limitation provision existed in the Claimant Statute at the time of the IGBWLA's decision.

[29]     Another argument posed by Sears is that once he was established as a claimant – and it is undisputed that he was, for some of his grain – "there was no statutory basis for the IGBWLA to reduce, disallow, or bifurcate his claim on the basis that the grain was deposited with Cline." *Id*. at 24. His position is that "[i]t is an either/or proposition: a person either is a claimant as defined by the law or he is not. A person cannot be both a claimant and not a claimant at the same time[,]" and the IGBWLA's Order should be reversed to allow his claim in full. *Id*. This argument, however, is built on the assumption that "within twelve months following delivery" was not intended to serve as a limitation or bar on claims for grain that had been delivered to the warehouse more than twelve months prior to its failure. We have rejected this view, as

explained above, and thus are not persuaded that claimant is an "all or nothing" proposition. Rather, we find that in the Claimant Statute the legislature intended to limit the IGBWLA's exposure for repayment of claims.

[30] Based on the above, we find no error with the trial court's determination that the IGBWLA's interpretation, which found that the Claimant Statute excluded claims for grain that was delivered over twelve months prior to the licensee's failure, was not arbitrary and capricious, not contrary to constitutional rights, and was supported the evidence. Accordingly, we affirm its denial of relief to Sears.

[31] Judgment affirmed.

Kirsch, J., concurs.

Robb, J., dissents with opinion.

Dick Sears,

*Appellant-Petitioner,*

v.

Indiana Grain Buyers and
Warehouse Licensing agency,

*Appellee-Respondent,*

Court of Appeals Case No.
18A-MI-883

**Robb, Judge, dissenting.**

In affirming the trial court and the various entities below, the majority reads Indiana Code section 26-3-7-2(5) (2010) so that the definition of "claimant" acts as a bar to all claims for grain delivered more than twelve months *immediately preceding* a licensee's failure. *Id;* slip op. at ¶ 22. The result of this interpretation is that only those producers who delivered grain within the twelve months before a licensee's failure are compensated by the statute. As the majority acknowledges, however, an agency's interpretation of a statute is entitled to no deference and I believe this reading of "claimant" is too narrow and serves to exclude producers the statute intended to compensate. Therefore, on the facts presented here, I would reverse the judgment of the trial court and remand for additional evidence.

The legislature added the emphasized language to the definition of "claimant" effective March 2010:

> "Claimant" means a person that is unable to secure satisfaction **within the twelve (12) months following delivery** of financial obligations due from a licensee under this chapter for grain that has been delivered to the licensee for sale or for storage under a bailment.

Ind. Code § 26-3-7-2(5); slip op. at ¶ 23. To the extent that the majority concludes any producer who delivered grain in the twelve months immediately preceding a licensee's failure constitutes a claimant—I agree.[9] After all, if a licensee failed six months after delivery, the producer is "unable to secure satisfaction within . . . twelve months[.]" *Id.* However, I do not believe these producers are the *only* claimants.

Nothing in the definition of "claimant" suggests to me that once a producer meets the definition of claimant by having been "unable to secure satisfaction within the twelve (12) months following delivery[,]" that the producer then ceases to be a claimant *after* twelve months. Having determined the legislature added the language "within the twelve (12) months following delivery[,]"

---

[9] With the caveat in deferred pricing arrangements that a producer must also request payment in addition to delivering the grain within those twelve months. *See* infra ¶ 9.

though, the question becomes: why? what purpose did it serve? I believe the statute was amended for two reasons.

[4] First, the language served as a means of defining when, exactly, a warehouse licensee was deemed to have failed. The Licensing Law defined the "failure" of a warehouse licensee as, among other things, "[t]he inability of a licensee to financially satisfy fully all obligations due to claimants." Ind. Code § 26-3-7-2(13)(A) (2015). The previous version of the claimant statute, that without a time period, left uncertainty regarding how long a producer must wait before enlisting the aid of the IGBWLA to collect on outstanding financial obligations. The amended statute, however, resolved that uncertainty by allowing producers to enlist the aid of the IGBWLA once they had attempted to collect a financial obligation from a licensee for a period of twelve months, at which point the facility could be deemed to have "failed," and the IGBWLA would be charged with liquidating the failed licensee's assets through the process contained in Indiana Code section 26-3-7-16.5 (2010). Should a claimant be defined as only those who were unable to obtain satisfaction within the twelve-month period immediately preceding the licensee's failure, as the majority concludes, the foregoing definition of "failure" becomes circular. Under that view, a warehouse licensee fails when they are unable to satisfy their financial obligations to "claimants" for a period of twelve months and "claimants" are only those whose were unable to secure the satisfaction of the financial obligations due from a licensee for the immediately preceding twelve months.

Secondly, the language served to distinguish a "claimant" from a "depositor." A "depositor" was defined as, among other things, "[a] person that delivers grain to a licensee under this chapter for storage or sale." Ind. Code § 26-3-7-2(9)(A) (2015). The claims process provided, in relevant part:

> (c) . . . At the hearing on claims, the director may accept as evidence of claims the report of agency representatives who in informal conferences with depositors have concluded that a claim is directly and precisely supported by the licensee's books and records. When there is disagreement between the claims of a depositor and the licensee's books and records, the director or the director's designated representative shall hear oral claims and receive written evidence of claims in order to determine the validity of the claim.
>
> * * *
>
> (e) Following the hearing on claims, the director shall make a determination as to the total proven storage obligation of the claimants and the loss sustained by each depositor who has proven a claim. Depositors found to have proven their claims shall be proven claimants. In arriving at that loss, in accordance with section 19 of this chapter, the director shall apply all grain on hand or its identifiable proceeds to meet the licensee's obligations to grain depositors of grain of that type. Initial determinations of loss shall be made on the amount of grain on hand, or identifiable proceeds, and shall reduce the amount to which a depositor may have a proven claim. With respect to the remaining unfulfilled obligations, the director shall, for the sole purpose of establishing each depositor's claim under this chapter, establish a date upon which the loss is discovered, shall price the grain as of that date, shall treat all outstanding grain storage obligations not covered by grain on hand or identifiable proceeds as being sold as of that date, and shall determine the extent of

> each depositor's loss as being the actual loss sustained as of that
> date. . . .

Ind. Code § 26-3-7-16.5 (2010).

[6] The claims process clearly acknowledged a difference between a depositor and a claimant, i.e., "the director shall make a determination as to the total proven storage obligation of the claimants and the loss sustained by each depositor who has proven a claim[,]" but provided a means by which depositors could join claimants who had been denied payment for twelve months, i.e., "[d]epositors found to have proven their claims shall be proven claimants." *Id.* In my view, this "once a claimant always a claimant until satisfied" interpretation of the statute is the only way the subsequent language of the claims process makes sense. Applying the majority's time-barred definition of claimant to this section renders the statute's separate discussion of depositors and claimants meaningless because, under that approach, a claimant is nothing more than a depositor who was unable to secure payment within the twelve months immediately preceding the licensee's failure.

[7] Finally, the majority interprets the fact that the legislature has since amended the statute to add a clear fifteen-month time bar as evidence that the previous definition of "claimant" intended to do the same. Slip op. at ¶ 26. I, however, believe this is evidence to the contrary. Had the legislature sought to change a twelve-month bar to a fifteen-month bar, I believe the legislature would have

simply amended the definition of "claimant." Instead, as part of larger changes to the statute, the legislature removed several parts of the definition of "claimant," not just the language "within twelve (12) months following delivery[,]" *see* slip op. at 26, n.8, and inserted the following language in the section detailing the claims process:

> (e) Only grain that has been delivered to a first purchaser licensee for sale or storage under a bailment not more than fifteen (15) months before the date of failure of the licensee may be considered by the director or the director's designated representative in determining the total proven storage and financial obligations due to depositors and the loss sustained by each depositor who has proven a claim.

Ind. Code § 26-3-7-16.5(e). Had the legislature intended to bar producers who delivered their grain more than twelve months before the date of failure with the previous version of the statute, this amended language evidences that it clearly knew how to do so.

[8] In sum, I believe that once a producer became a claimant they remained a claimant until satisfied, regardless of the date of failure. This, I believe, is more congruous with the statute's language and the statute's overall intent to aid farmers—not to exclude them.

[9] Applied here, the record reveals the grain delivered before October 8, 2014, some 83,146.78 bushels of corn and 17,293.41 bushels of soybeans, was

delivered under a deferred pricing arrangement. Under such an arrangement, "a producer delivers the grain, title transfers to the licensee, and the price for the grain is determined and paid at a later date." Slip op. at ¶ 6. Because the financial obligation remains uncertain until the producer requests payment from the licensee, however, the producer must also have requested payment in order for such obligation to have been "due." See Black's Law Dictionary 609 (10th ed. 2014) (defining "due" as "[i]mmediately enforceable" or "[o]wing or payable"); Black's Law Dictionary 499 (6th ed. 1990) ("The word "due" always imports a fixed and settled obligation or liability, but with reference to the time for its payment there is considerable ambiguity in the use of the term . . . ."). The record is silent, however, regarding *when*, or even *if*, Sears requested payment pursuant to the deferred pricing arrangement. If he had requested payment and was denied for a period of twelve months or if he had requested payment in the twelve months preceding Cline's failure, I believe he would also constitute a "claimant" for the purposes of the grain delivered before October 8, 2014. Therefore, I would reverse the judgment of the trial court and remand this cause for further evidence regarding the specifics of Sears' dealings with Cline under the deferred pricing agreement.